**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Petitioner,

v.

NEWPORT NEWS SHIPBUILDING AND                    No. 96-2654
DRY DOCK COMPANY,
Respondent,

and

CALLIS CARMINES,
Claimant.

On Petition for Review of an Order
of the Benefits Review Board.
(95-0440)

Argued: December 4, 1997

Decided: March 9, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Motz and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Joshua Thomas Gillelan, II, Senior Attorney, Office of
the Solicitor, UNITED STATES DEPARTMENT OF LABOR,

Washington, D.C., for Petitioner. Jonathan Henry Walker, MASON & MASON, P.C., Newport News, Virginia, for Respondent. **ON BRIEF:** J. Davitt McAteer, Acting Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Petitioner.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

A maritime worker exposed to asbestos during 30 years of employment filed a claim for disability benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. His employer did not contest the right to benefits for his asbestosis. However, the employer argued that it should be relieved from shouldering the full amount of the benefits, pursuant to the special fund provision of § 908(f) of the LHWCA, because the worker's disability was due in part to pre-existing conditions.

An administrative law judge found that the employer merited § 908(f) relief because the worker's disability was materially and substantially greater than that which would have resulted from the asbestosis alone, but for the pre-existing conditions of hypertensive cardiovascular disease and pleurisy-related interstitial fibrosis. The Director of the Office of Workers' Compensation Programs, United States Department of Labor, ("Director") appealed the award of § 908(f) relief. Because there was not substantial evidence to support the ALJ's award, we reverse.

I. BACKGROUND

A. The Claim under the LHWCA

Callis Carmines ("Claimant") was employed as a mechanic and electrical supervisor at Newport News Shipbuilding and Dry Dock Company from 1936 until his retirement in 1981. Newport News is in the business of constructing and repairing ocean-going vessels.

2

Throughout his employment, the Claimant performed work related to ship repair or construction on the navigable waters of the James River and its adjacent piers and dry docks.

For over thirty years during this employment, from 1936 until 1968, the Claimant was daily exposed to large quantities of asbestos. Sometimes he worked in environments where asbestos filled the air so thickly as to form a white cloud of dust. Often he would nap in a pile of asbestos during his lunch break.

In 1990, the Claimant's attending physician, Dr. Frank Robert, arranged for him to be seen by a specialist, Dr. Laurie Moore, Jr. On October 25, 1990, Dr. Moore diagnosed that the Claimant suffered from pulmonary asbestosis. Based upon her examination of the Claimant and her review of his chart, Dr. Moore opined that the Claimant suffered a 25-30% permanent impairment of the whole person due to his pulmonary asbestosis. This estimate was made pursuant to the <u>AMA Guidelines to the Evaluation of Permanent Impairment</u>, third edition.

The Claimant filed a claim for compensation benefits pursuant to the LHWCA. The Claimant and Newport News stipulated that compensation benefits should be paid to him for a work-related 28% permanent impairment pursuant to 33 U.S.C. § 908(c)(23). The parties also agreed that the Claimant was entitled to compensation of $63.37 per week, payable from the time of diagnosis forward. Neither the fact of compensation nor its amount are at issue here.

B. <u>Section 908(f) Relief</u>

The Longshore and Harbor Workers' Compensation Act establishes a statutory workers' compensation program for employees injured in maritime work. <u>See</u> 33 U.S.C.§§ 901-950. Under the LHWCA's "aggravation rule," if an injury at work aggravates an employee's pre-existing disability, the employer is liable for the employee's entire resulting disability, not only the disability that would have been due to the work-related injury alone. <u>See Newport News Shipbuilding and Dry Dock Co. v. Fishel</u>, 694 F.2d 327, 329 (4th Cir. 1982). "If this rule stood alone, it`would create a strong disincentive for an employer to hire handicapped workers'" for fear of

having to pay for the entirety of their injuries if their pre-existing dis-
abilities were to be aggravated at work. <u>Director, OWCP v. Luccitelli</u>,
964 F.2d 1303, 1304 (2d Cir. 1992) (quoting <u>Director, OWCP v. Gen-
eral Dynamics Corp. (Krotsis)</u>, 900 F.2d 506, 508 (2d Cir. 1990),
<u>overruled in part on other grounds by Director, OWCP v. General
Dynamics Corp. (Bergeron)</u>, 982 F.2d 790, 793-95 (2d Cir. 1992)).
In order to relieve employers of this disincentive, Congress enacted
the special fund provision of 33 U.S.C. § 908(f).[1] <u>See Director,
OWCP v. Newport News Shipbuilding and Dry Dock Co. (Langley)</u>,
676 F.2d 110, 112 (4th Cir. 1982).

Section 908(f) still requires employers to pay the entire amount of
the weekly benefits to employees who are injured on the job, even if
the ultimate disability is due in part to a pre-existing disability. How-
ever, if the ultimate disability is "materially and substantially greater"
than that which would have resulted from the work-related injury
<u>without</u> the pre-existing condition, then the employer need only pay

_____

[1] Section 908(f) provides, in pertinent part:

> (f) Injury increasing disability:
>
> (1) In any case in which an employee having an existing per-
> manent partial disability suffers injury, the employer shall pro-
> vide compensation for such disability as is found to be
> attributable to that injury based upon the average weekly wages
> of the employee at the time of the injury.
>
> . . .
>
> In all other cases in which the employee has a permanent par-
> tial disability, found not to be due solely to that injury, <u>and such
> disability is materially and substantially greater than that which
> would have resulted from the subsequent injury alone</u> , the
> employer shall provide in addition to compensation under sub-
> sections (b) and (e) of this section, compensation for one hun-
> dred and four weeks only.
>
> (2)(A) After cessation of the payments for the period of weeks
> provided for herein, the employee or his survivor entitled to ben-
> efits shall be paid the remainder of the compensation that would
> be due out of the special fund established in section 944 of this
> title . . . .

33 U.S.C. § 908(f) (emphasis added).

4

those benefits for 104 weeks (2 years). See Director, OWCP v. Newport News Shipbuilding and Dry Dock Co. (Harcum), 8 F.3d 175, 182 (4th Cir. 1993) [hereinafter Harcum], aff'd on other grounds, 514 U.S. 122 (1995). After 104 weeks, the benefits are paid out of a special fund administered by the Director of the Office of Workers' Compensation Programs.**2** See id. at 180-81.

To avail itself of § 908(f) relief where an employee suffers from a permanent partial disability, an employer must affirmatively establish: 1) that the ultimate disability is not caused solely by the work-related injury, but is also caused in part by a pre-existing partial disability; 2) that the pre-existing disability was manifest to the employer prior to the work-related injury;**3** and 3) that the ultimate permanent partial disability materially and substantially exceeded the disability that would have resulted from the work-related injury alone, in the absence of the pre-existing condition. Harcum , 8 F.3d at 182-83. To meet the third prong, an employer must quantify the type and extent of the disability that the claimant would have suffered without the pre-existing condition:

> A showing of this kind requires quantification of the level of impairment that would ensue from the work-related injury alone. In other words, an employer must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury. Once the employer establishes the level of disability in the absence of a pre-existing permanent partial disability, an adjudicative body will have a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater.

_____

**2** As administrator of this fund, the Director has standing to appeal a Benefits Review Board decision granting an employer relief under § 908(f). See id. at 180-81.

**3** We do not apply the manifestation requirement in cases where the worker suffers from a post-retirement occupational disease, such as the typical case of asbestosis. See Newport News Shipbuilding and Dry Dock Co. v. Harris, 934 F.2d 548, 553 (4th Cir. 1991).

5

Id. at 185-86.

The crucial point for the instant case is that it is not enough for an employer to show that the pre-existing condition led to a serious disability, if the work-related injury would itself have led to the same or a greater disability: § 908(f) relief is only available if the ultimate disability is substantially greater than that which would have arisen absent the pre-existing disability. For example, assume a claimant had the pre-existing condition of a paralyzed leg, which is a permanent partial disability. If that leg were amputated in a work-related accident, the claimant now having a paralyzed leg-stump would still suffer from the same permanent partial disability (i.e., no use of one leg) from which he would have suffered if his amputated leg had never been paralyzed in the first place. With or without the pre-existing disability of paralysis, amputation leads to loss of one leg. In this example, no relief under § 908(f) would be available to the employer because the ultimate permanent partial disability is not "materially and substantially greater" than it would have been without the pre-existing condition, it is the same. See generally Luccitelli, 964 F.2d at 1305-06 (making an analogous argument regarding a claimant with a pre-existing disability of the right knee and a work-related injury of the left knee).

In our case it is not enough for Newport News to demonstrate that the Claimant had a pre-existing condition that led to a permanent disability of the lungs if the asbestosis would itself have led to the same permanent disability with or without the pre-existing condition. Newport News's in-house physician asserted that the Claimant had substantial pre-existing lung scarring due to pleurisy, but that assertion is irrelevant for § 908(f) relief if the later asbestosis would inevitably have ruined either scarred or healthy lungs.

This is the proper result because the employer should have to pay for the entirety of the injury caused by the work-related accident, even if the employee had a pre-existing disability. Section 908(f) was adopted to prevent an employer from being additionally liable when an injury befalls a previously disabled employee; it should not now confer a windfall on those employers by relieving them from the full liability for work-related injuries where the injured employee happens to have been previously disabled.

6

C. The Evidence Offered by Newport News

The only issue to be resolved by the ALJ was whether Newport News was entitled to § 908(f) relief, shifting the liability for the Claimant's permanent disability to the special fund after two years. Newport News asserted that such relief was warranted because the Claimant's disability was not caused solely by the asbestosis, but was exacerbated by two pre-existing conditions.

In support of its request for limitation of its liability pursuant to § 908(f), Newport News initially submitted a letter from its in-house physician, neurologist-psychiatrist Dr. James H. Hall III. Based on his review of the Claimant's medical records but without examining him, Dr. Hall opined that the Claimant had pre-existing disabilities in the form of "hypertensive cardiovascular disease" and pleurisy-related "lung scarring/interstitial fibrosis." Letter from Dr. Hall to Mr. Paul Hartmann of Oct. 13, 1992, at 1 [hereinafter first Dr. Hall letter]. Dr. Hall opined that the Claimant's lung impairment, AMA rating and disability were not caused by his asbestosis alone, but were materially contributed to and materially and substantially caused by his pre-existing hypertensive cardiovascular disease and lung scarring/interstitial fibrosis. Dr. Hall stated that, if the Claimant merely had asbestosis, his disability and impairment rating would have been significantly less. See id. at 2.

More than a year later, shortly after the hearing before the ALJ and following this Circuit's decision in Harcum, Newport News filed with the ALJ a second letter from its medical department "supplement[ing]" the earlier letter. See letter from Dr. Hall to Mr. Hartmann of Nov. 30, 1993 [hereinafter second Dr. Hall letter]. The supplement quantified the Claimant's disability as the agreed-upon 28 percent AMA rating, and opined that if the claimant only had asbestosis, his AMA rating would be no more than 10%. See id. at 1. This opinion was based not on an independent evaluation of the seriousness of the Claimant's asbestosis or the degree of the disability caused by that asbestosis, but rather "on the long-standing x-ray evidence of prior lung scarring before the asbestosis, and the pulmonary impairment such scarring causes." Id.

In his Decision and Order, the ALJ accepted Dr. Hall's opinion that the Claimant suffered from hypertensive cardiovascular disease and

7

from "pulmonary pleurisy, which left a permanent and serious interstitial fibrosis in the worker's lungs." Carmines v. Newport News Shipbuilding and Dry Dock Co., No. 93-LHC-1051, slip op. at 6 (Oct. 11, 1994). Crediting Dr. Hall's "uncontested opinion, which is persuasive because it is supported by the medical records of the shipyard clinic, hospital records, and the test records," the ALJ found that the claimant's disability was materially and substantially greater than would have resulted from the asbestosis alone. Id. at 7. Accordingly he held that Newport News qualified for § 908(f) relief from the special fund. See id. at 7-8.

The Director appealed this finding to the Benefits Review Board, which affirmed the ALJ's decision by operation of law.[4] The question before us is whether the evidence presented to the ALJ was sufficient to support his finding that Newport News warranted § 908(f) relief.

II. ANALYSIS

We will uphold the factual findings of the ALJ so long as they are "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3) (1983); see Newport News Shipbuilding and Dry Dock Company v. Tann, 841 F.2d 540, 543 (4th Cir. 1988). We will not disregard these findings merely "on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." Id.

Nevertheless, to be sufficient the evidence must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994). The ALJ may not merely credulously accept the assertions of the parties or their repre-

_____

[4] Pursuant to the Department of the Interior and Related Agencies Appropriations Act, 1996, Pub. L. No. 104-134, Title I, § 101(d), 110 Stat. 1321, *1321-219 (1996), an appeal under the LHWCA that had been pending before the Benefits Review Board for more than one year on September 12, 1996, was considered affirmed as of that date.

sentatives, but must examine the logic of their conclusions and evaluate the evidence upon which their conclusions are based.[5]

Of course the ALJ's legal determinations are reviewed de novo. This includes the standard by which he determines entitlement to § 908(f) relief. See Harcum, 8 F.3d at 179.

The only evidence in the record to support the ALJ's conclusion that the claimant's ultimate disability was materially and substantially greater than it would have been without the pre-existing conditions of hypertensive cardiovascular disease and pleurisy were the assertions of Dr. Hall, Newport News's in-house physician who neither examined nor treated the Claimant. However, the bulk of the medical evidence submitted by both parties was contrary to Dr. Hall's opinion. The evidence in the record considered as a whole could not have convinced a reasonable mind that the Claimant's disability was materially exacerbated by pre-existing conditions. Even if we were to defer to the ALJ's findings of fact, the evidence was insufficient as a matter of law to entitle Newport News to § 908(f) relief.

A. Hypertensive Cardiovascular Disease

Newport News's physician, Dr. Hall, attested that the claimant suffered from hypertensive cardiovascular disease and that the Claimant's "lung impairment, AMA rating and disability are materially and substantially contributed to and materially and substantially caused by" the disease. First Dr. Hall letter, at 2. However Dr. Hall never treated or even examined the Claimant. The only evidence in the record that provided support for Dr. Hall's "diagnosis" was a discharge summary from when the claimant was treated for epididymitis in 1974, which refers to a "history of hypertension." (J.A. at 18.)

_____

[5] A useful analogy can be drawn to the ALJ's role in Black Lung cases. There we have held that "the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence" if it is "totally contradicted by other evidence in the record." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984); see also Eagle v. Armco, Inc., 943 F.2d 509, 511 n.1 (4th Cir. 1991) (same). The ALJ may not merely credit the doctor's opinion, but must evaluate that opinion in light of the other evidence in the record.

9

There was no evidence whatsoever that the Claimant ever developed any symptoms of hypertensive cardiovascular disease after this single finding of "some beginning elevation of his blood pressure." (J.A. at 18.) Nor did Dr. Hall point to any other evidence of hypertensive cardiovascular disease. Instead, he merely asserted that this single twenty-two-year old notation demonstrated "a long history of hypertension -- the first stage of hypertensive cardiovascular disease, as early as 1974." First Dr. Hall letter, at 1 (citing only the 1974 discharge sheet).

By contrast, the medical records of the doctors who actually examined the Claimant make no reference to hypertensive cardiovascular disease. The specialist who first diagnosed the Claimant's asbestosis, Dr. Moore, was aware of the past hypertension in his medical records. However, after a review of the Claimant's chart and an office examination of him, Dr. Moore attributed the Claimant's disability wholly to asbestosis, without mention of any cardiovascular disease. See letter from Dr. Laurie Moore, Jr., to Mr. Gary West of Aug. 12, 1992, at 1 [hereinafter Dr. Moore letter]. Dr. James Baker also examined the Claimant at the request of his treating physician, Dr. Frank Robert. Dr. Baker thoroughly described the Claimant's past medical history as well as his current condition, but made no mention of any cardiovascular disease. See letter from Dr. James Baker to Dr. Frank Robert of Sept. 18, 1991, at 1-3.

The single twenty-two-year-old diagnosis of the beginning of high blood pressure is not substantial evidence in the record sufficient to persuade a reasonable mind that the claimant now has hypertension, much less that hypertensive cardiovascular disease contributed to the disability from the Claimant's asbestosis. Nevertheless, the ALJ accepted Dr. Hall's assertion that part of the Claimant's disability was caused by hypertensive cardiovascular disease, and further that the Claimant's disability was made substantially and materially worse by this disease. In defense of the ALJ's finding, Newport News asserts that "[g]iven the original diagnosis in 1974, that twenty plus years that elapsed since then, it was certainly reasonable for Dr. Hall to conclude that [the Claimant's] impairment was due in part to his pre-existing hypertensive cardiovascular disease." Brief of Respondent at 21. This is ridiculous. That the only evidence of the Claimant's suffering from hypertension is a solitary notation more than twenty years

10

old would lead a reasonable person to the very opposite conclusion, namely, that the Claimant is _not_ currently suffering from hypertensive cardiovascular disease.

Newport News also insists that the ALJ was right to accept Dr. Hall's medical opinion regarding hypertensive cardiovascular disease because it was "uncontradicted." This is irrelevant. The Director was not a party to the original administrative hearing, and the Claimant had no interest in whether the employer or the government paid his benefits. Perhaps the Director ought to have intervened and submitted evidence at the hearing before the ALJ. His failure to do so does not affect whether the evidence that was offered was sufficient to support the ALJ's conclusion, however.

Furthermore, because the employer never offered any evidence quantifying the disability that the Claimant would have suffered absent the alleged hypertensive cardiovascular disease, the ALJ had no basis upon which to determine that the Claimant's ultimate disability was materially and substantially greater than it would have been without the pre-existing disability. Our decision in Harcum requires a "quantification of the level of impairment that would ensue from the work related injury alone," in order to determine whether the ultimate disability is materially and substantially greater than that which would have resulted from the work related injury absent the pre-existing condition. See Harcum, 8 F.3d at 185. Newport News's supplementary letter, attempting to meet Harcum's quantification requirement, reasserted that the Claimant suffered from hypertensive cardiovascular disease but never quantified the degree of disability that the Claimant would have suffered absent the cardiovascular disease. See second Dr. Hall letter. Instead, Dr. Hall limited his quantification to the degree of disability the claimant would have suffered absent "prior lung scarring." Id.

The evidence of the pre-existing disability of hypertensive cardiovascular disease was insufficient to support § 908(f) relief as a matter of law. See Harcum, 8 F.3d at 185-86. We now address whether the ALJ's award may be sustained based upon the evidence of pre-existing lung scarring/interstitial fibrosis.

11

B. Pleurisy-Related Lung Scarring/Interstitial Fibrosis

The Claimant's medical records document three instances of pleurisy (an inflammation of the air sacks in the lungs, the pleura), in 1948, 1954 and 1960. Dr. Hall opined that the Claimant's "lung scarring/interstitial fibrosis," noted in x-rays from 1967, 1968, 1970, 1973, 1979 and 1981, was due to these bouts of pleurisy. First Dr. Hall letter, at 1. He claimed that the lung scarring was a "pre-existing condition[ ]," which, because of its permanent and serious nature, itself caused substantial impairment and contributed to the Claimant's lung impairment caused by the asbestosis. Id. at 1-2.

The lung scarring was first identified in an x-ray of January 30, 1967, seven years after the final instance of pleurisy but during the culmination of more than three decades of daily exposure to asbestos. That original x-ray noted "old scarring" in the right middle lobe of the Claimant's lungs, which could possibly have been due to the old pleurisy. (J.A. at 14.) However, subsequent x-rays document the progressive scarring of the Claimant's lungs, noting " increased interstitial fibrosis" in 1968, scarring in the right lower lobe in 1970, and pleural thickening on the left in 1973. (J.A. at 14-15 (emphasis added).) The scarring was eventually diagnosed, in 1990, as asbestosis.

There is no evidence of any bouts of pleurisy after 1960 to explain the progressive lung scarring, nor is there any evidence that the old pleurisy in 1948, 1954 or 1960 could have caused such progressive lung disease throughout the next few decades.[6] On the contrary, Dr. Moore explained that the scarring, seen on an x-ray in 1990, was "consistent with pulmonary asbestosis." (J.A. at 20.) Dr. Moore knew of the Claimant's history of pleurisy, but after examining him opined that his 25-30% impairment was "due to his pulmonary asbestosis" without making any mention of the pleurisy. Dr. Moore letter.

Nevertheless, the ALJ credited Dr. Hall's opinion and found that the Claimant's permanent partial disability was not due solely to the

_____

[6] Dr. Hall's letter attributing the scarring to pleurisy implies that the same scarring is seen on the x-rays from 1967 through 1981. He does not seem to realize that these x-rays and accompanying medical records describe a progressive increasing of the lung scarring/interstitial fibrosis.

12

asbestosis, but that the disability was "materially and substantially greater than that which would have resulted from the asbestosis alone but for the pre-existing conditions," including the lung scarring/interstitial fibrosis. Carmines, No. 93-LHC-1051, slip op. at 7. It is the Administrative Law Judge's prerogative to select the inference that is most reasonable from the evidence. But even were we to accept the ALJ's dubious finding, the evidence is still insufficient as a matter of law to support § 908(f) relief.

In Newport News's supplementary letter, Dr. Hall reasserted that the Claimant's AMA rating due to his disability was 28%. In an attempt to meet Harcum's requirement that an employer quantify the degree of disability that would have occurred without the pre-existing conditions, Dr. Hall explained:

> If [the Claimant] merely had asbestosis, his AMA rating would be no more than 10%. I based this opinion on the long-standing x-ray evidence of prior lung scarring before the asbestosis, and the pulmonary impairment such scarring causes. By the time a chest x-ray shows scarring, it is significant and causes substantial pulmonary impairment.

Second Dr. Hall letter, at 1 (emphasis added). We have already explained that the "long-standing x-ray evidence" is not actually "prior" lung scarring, but rather begins after three decades of exposure to asbestos and was eventually diagnosed as asbestosis. Moreover, the reasoning that Dr. Hall used is precisely the invalid reasoning described above at pages 6-7: Dr. Hall found that asbestosis accounted for no more than 10 of the 28% impairment that the Claimant suffered because the pre-existing pulmonary impairment was itself quite substantial -- apparently 18 of the 28%. This was not proper quantification because the seriousness of the supposed pleurisy-related scarring is irrelevant to the seriousness of the asbestosis.

Harcum requires that Dr. Hall determine what the Claimant's disability would have been independent of the pre-existing injury. It is not proper simply to calculate the current disability and subtract the disability that resulted from the pre-existing injury (which is what Dr. Hall did). Perhaps the Claimant's asbestosis from 30 years of expo-

13

sure was serious enough to lead to a 28% disability rating whether he got that asbestosis after having healthy lungs or after having lungs that were scarred by pleurisy. In that case, regardless of how serious the damage due to pleurisy was, it could not be said that the ultimate disability was "materially and substantially greater" than it would have been without the pleurisy -- it would have been a 28% disability either way.

We have previously recognized the analogous proposition that "[w]here a subsequent injury and its effects are alone sufficient to cause permanent total disability the mere presence of a pre-existing disability will not warrant contribution from the special fund." John T. Clark & Son of Maryland, Inc. v. Benefits Review Board, 621 F.2d 93, 95 & n.2 (4th Cir. 1980). And other cases have recognized this understanding of § 908(f). For example, the Second Circuit has rejected the proposition that the mere fact that the claimant had a pre-existing impairment can establish that the resulting disability was materially greater than it would have been absent the pre-existing impairment. See Luccitelli, 964 F.2d at 1305-06. Where a claimant's work-related knee injury was enough totally to disable him, the Second Circuit held that the extent of disability resulting from a previous knee injury was irrelevant. See id.

In the instant case, the ALJ should have determined what degree of disability the Claimant would have suffered from his asbestosis alone. To meet its burden, the employer should have offered evidence from a doctor, such as a treating physician, who could testify to the extent and seriousness of the asbestosis suffered by the Claimant and the degree of disability it would have caused alone. [7] Such evidence is necessary before the ALJ can compare that degree of disability that would have resulted solely from the asbestosis to the degree of disability ultimately produced by the combination of the asbestosis and the supposed pre-existing conditions. Without such evidence, the

_____

[7] The only such evidence available here was Dr. Moore's opinion that the Claimant "has a 25-30% impairment of the whole person, due to his pulmonary asbestosis." Dr. Moore letter. Because this opinion attributes the entirety of the Claimant's disability to asbestosis, it undermines a finding that the Claimant's ultimate 28% disability was materially and substantially contributed to by pre-existing conditions.

14

mere assertion by the employer's in-house physician that the Claimant's ultimate disability was made materially and substantially worse by the pre-existing conditions is not sufficient to warrant § 908(f) relief.

III.

Because there was not sufficient evidence in the record as a whole to support the ALJ's judgment that the Claimant's disability was materially greater than it would have been without the pre-existing conditions of hypertensive cardiovascular disease and pleurisy, the award of § 908(f) relief is hereby

REVERSED.