Affirmed by published opinion. Chief Judge FABER wrote the opinion, in which Judge KING joined. Judge WIDENER wrote a concurring opinion.
OPINION
FABER, Chief Judge:
Newport News Shipbuilding and Dry Dock Company (“Newport News”) seeks reversal of a decision of the Benefits Review Board (the “BRB”) denying relief under section 8(f) of the Longshore and Harbor Workers’ Compensation Act, 33 U.S.C. §§ 901-950 (“LHWCA”). For the reasons discussed below, we affirm the decision of the BRB.
• I.
In January 1997, Randall Pounders (“Pounders”) was diagnosed with asbestosis. A pulmonary function test revealed a fifteen percent permanent partial whole *457 person impairment as measured by the AMA Guides to the Evaluation of Permanent Impairment, 4th ed. His employer, Newport News, admits that he was exposed to asbestos during his employment, but contends that he had a pre-existing lung disease which materially and substantially contributed to his ultimate disability.
As early as 1979, pulmonary function tests performed on Pounders revealed restrictive lung disease. This condition continued to appear on such tests conducted from 1980 through 1984. In 1996, Pound-ers was diagnosed with diabetes, hypertension and pleural fibrosis. Pounders retired on December 81,1995, more than one year before he was diagnosed with asbestosis.
On July 80, 1998, the Administrative Law Judge (“ALJ”) filed his original decision and order denying the § 8(f) claim of Newport News. Almost one year later, on July 28, 1999, the BRB reversed and remanded the case for further consideration in view of the standard established in Director, OWCP v. Newport News Shipbuilding and Dry Dock Co. (Carmines), 138 F.3d 134 (4th Cir.1998). On reconsideration, however, the BRB reversed itself and affirmed the original decision of the ALJ.
II.
Section 8(f) of the LHWCA, 33 U.S.C. § 908(f), provides in part as follows:
In ... eases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide ... compensation for one hundred and four weeks only.
After the one hundred four-week period has passed, the Office of Workers’ Compensation Programs (“OWCP”), which administers a special fund for that purpose, is responsible for disability payments under § 8(f)-
An employer who seeks to limit liability for an employee’s permanent partial disability under § 8(f) must establish three elements: (1) that the ultimate disability is caused in part by a pre-existing partial disability; (2) that the pre-existing disability was manifest to the employer prior to the work-related injury; and (3) that the ultimate disability materially and substantially exceeded the disability that would have resulted from the work-related injury alone, in the absence of the preexisting condition. See Director, OWCP v. New-port News Shipbuilding and Dry Dock Co. (Carmines), 138 F.3d 134, 138-39 (4th Cir.1998). See also Director, OWCP v. Newport News Shipbuilding and Dry Dock Co. (Harcum), 8 F.3d 175, 182-83 (4th Cir.1993), aff'd on other grounds, 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995).
The LHWCA sets out the applicable standard of review for this case in § 921(b)(3). When under review by the BRB, the ALJ’s factual findings are deemed conclusive “if supported by substantial evidence in the record considered as a whole.” 33 U.S.C. § 921(b)(3). This court has held that substantial evidence is “more than a scintilla but less than a preponderance.” Elliott v. Adm’r, Animal & Plant Health Inspection Serv., 990 F.2d 140, 144 (4th Cir.1993). Additionally, as stated in Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir.1988), the ALJ’s findings “may not be disregarded on the basis that other inferences might have been more reasonable.” Rather, “deference must be given the fact-finder’s inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited.” *458 Id. Legal determinations are reviewed de novo. This includes the standard by which the ALJ determines entitlement to § 8(f) relief. See Carmines, 138 F.3d at 141.
III.
There is no disagreement in this case that the first two conditions necessary for relief under § 8(f) are met. The parties agree that Pounders had a pre-existing disability. The second element, manifestation, is not required in cases where the worker suffers from a post-retirement occupational disease, as is the case with Pounders. The sole issue involves the weight of the evidence with regard to the third requirement, commonly referred to as the “contribution” element.
To satisfy the contribution element in this case, Newport News relied upon the parties’ stipulation that Pounders has a fifteen percent permanent partial disability, which is attributed to both his preexisting disability and his work-related asbestosis, and the opinion of James Reid, a company doctor, who stated that if Pound-ers had only the work-related asbestosis, his impairment rating would be at least fifteen percent less.[1] Dr. Reid explained-his conclusion and the basis for it as follows:
Mr. Pounders’ AMA rating and disability are not caused by his alleged asbestosis alone, but rather his AMA rating and disability are materially and substantially contributed to, and materially and substantially hastened by his pre-exist-ing pleural fibrosis/restrictive lung disease and hypertensive cardiovascular disease-diabetes. Since the 1980’s, hypertension has been known to reduce pulmonary function. This is hardly surprising since the blood in the vascular system enters the lungs, and oxygen is transferred to the blood from the lungs. A January, 1995 article in Chest, a leading medical journal, based on a grant from the National Heart, Lung and Blood Institute of NIH, documents the effect of hypertension on pulmonary function. Hypertension, which Mr. Pounders had, causes a three percent (3%) drop in the FEVI and a three percent (3%) drop in the FVC. On average, each one percent (1%) drop in FEVI or FVC results in a one percent (1%) increase in the AMA rating. Of course, the more longstanding or severe the cardiovascular condition, the greater the drop in FEVT/FVC and hence the greater the increase in the AMA rating. Mr. Pounders’ Shipyard pulmonary function tests as early as 1979 showed a 10% AMA rating disability. Thus, if Mr. Pounders merely had asbestosis, without his pre-existing disabilities, his AMA rating would be at least 15% less.
J.A. at 18.
The BRB concluded that the evidence of contribution fell short of the standard for § 8(f) relief established by this court in Carmines. Carmines was exposed to asbestos at the Newport News facility over a thirty-year period. See Carmines, 138 F.3d at 137. He was diagnosed with pulmonary asbestosis in 1990 and deemed to have a twenty-five percent to thirty percent impairment of the whole person. See id. He also had substantial pre-existing scarring of the lungs due to pleurisy. See id. at 139. Dr. Hall, a company physician for Newport News, opined on the basis of old x-rays that Carmines’ pre-existing disability accounted for about eighteen percentage points of the.total disability, which *459 was twenty-eight percent. See id. at 140. He concluded that Carmines’ asbestosis accounted for the difference — ten percent. See id.
This court determined in Carmines that Dr. Hall’s evidence was insufficient to meet the contribution requirement and show the claimant’s total disability to be materially and substantially greater than the disability resulting from the work-related condition alone. See Carmines, 138 F.3d at 134, 142 (4th Cir.1998). The court pointed out that Carmines’ asbestosis standing alone could account for all of his disability. See id. at 143. In the absence of expert evaluation of the degree of disability covered by the asbestosis separate and apart from the impact of the preexisting condition, the court said, there was no basis for a comparison which would reveal whether the prior injury materially and substantially contributed to the total impairment. See id. at 143-44. To satisfy the third requirement under § 8(f), the court held that, “an employer must quantify the type and extent of the disability that the claimant would have suffered without the pre-existing condition.” Id. at 139. It is not enough, as Dr. Hall did in Carmines, to simply calculate the total current disability and subtract from it the disability resulting from the pre-existing condition.
In weighing any application for § 8(f) relief the court is faced with competing policy goals. The purpose of § 8(f) is to encourage reemployment of handicapped workers. See Lawson v. Suwanee Fruit & S.S. Co., 336 U.S. 198, 201, 69 S.Ct. 503, 93 L.Ed. 611 (1949). If employers were charged with the entire cost of second injuries under the LHWCA, there would be a powerful disincentive to hire the handicapped. On the other hand, employers should be held responsible for the full cost of injuries and illnesses which occur on their watch and should not be permitted lightly to transfer such burdens to the special fund.
The problem is exacerbated by the fact that the adversarial system breaks down to a degree with regard to § 8(f) claims. The evidentiary hearing in such cases may involve only the employer and the claimant. The claimant seeks to be compensated for his work-related condition. He probably does not care whether he is paid out of the general fund, with its higher cost to his employer, or out of the special § 8(f) fund. The employer, on the other hand, operates under a significant financial incentive to throw as many cases as it can into the special fund. It is only after the initial hearing is concluded that the Director, OWCP — the person with the interest in protecting the integrity of the special fund — enters the picture. The record made at the original hearing may as a consequence be tilted in favor of § 8(f) relief. The problem is complicated by the fact that medical evidence relating to the contribution requirement is frequently provided by company doctors. Human nature as it is, company doctors, however honest, are likely to give the close calls to those who pay their salaries.
In this context, the rigorous standard of Carmines makes good sense and is supported by cases from other circuits. In Sealand Terminals, Inc. v. Gasparic, 7 F.3d 321, 323 (2d Cir.1993) (per curiam), the court held that § 8(f) relief is precluded unless the evidence establishes that the work-related injury alone would not have caused the workers’ total disability. The United States Court of Appeals for the First Circuit, in Director, OWCP v. Bath Iron Works Corp., 129 F.3d 45 (1st Cir.1997), followed this court’s opinion in Har-cum, and held that, to justify § 8(f) relief, an employer must show the degree of disability attributable to the work-related injury alone, “so that this amount may be *460 compared to the total percentage of the partial disability for which coverage under the LHWCA is sought.” 129 F.3d at 51; see also Two “R” Drilling Co., Inc. v. Director, OWCP, 894 F.2d 748 (5th Cir.1990).
Applying the Carmines standard here, we find the evidence insufficient to support § 8(f) relief. We agree with the BRB that Dr. Reid’s methodology fails to satisfy Carmines. Dr. Reid concluded that Pounders’ asbestosis, without the pre-ex-isting condition, would result in an AMA rating of at least fifteen percent less than the rating which results from the two conditions combined. He thus places the degree of disability from the asbestosis alone at less than the total disability. He gets there, however, by using a methodology strikingly similar to the discredited “subtraction” method employed by Dr. Hall in Carmines. Dr. Reid begins with the normal impact of hypertension on breathing and reduces the amount of the total disability to account for this. He does not, as Carmines requires, make an assessment of the impact of the asbestosis standing alone.[2] In the absence of such an assessment, the evidence fails to satisfy the Carmines test.
Accordingly, the decision of the BRB is

AFFIRMED.

. Two other doctors reviewed the records and signed off on a form indicating they agreed with Dr. Reid’s opinion. Neither examined Pounders. The ALJ, correctly in our view, gave little weight to these assessments. J.A. at 40.

. Judge Smith of the BRB, in his concurring opinion below, points out the difficulty which confronts a doctor called upon to make the assessment required by Carmines in a case involving successive lung diseases. The difficulty of making the assessment in isolated cases, however, does not compel us to adopt a different rule.