**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CLAIRE GREEN-BROWN,

*Petitioner,*

v.

SEALAND SERVICES, INCORPORATED;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

*Respondents.*

No. 08-1236

On Petition for Review of an Order
of the Benefits Review Board.
(07-0507)

Argued: September 22, 2009

Decided: October 29, 2009

Before WILKINSON and MICHAEL, Circuit Judges,
and Irene M. KEELEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

Petition for review granted; reversed and remanded by pub-
lished opinion. Judge Michael wrote the opinion, in which
Judge Wilkinson and Judge Keeley joined.

## COUNSEL

**ARGUED**: Gregory Edward Camden, MONTAGNA,
KLEIN, CAMDEN, LLP, Norfolk, Virginia, for Petitioner.

Patrick Michael Brogan, DAVEY & BROGAN, PC, Norfolk, Virginia, for Respondents. **ON BRIEF:** Charlene A. Morring, MONTAGNA, KLEIN, CAMDEN, LLP, Norfolk, Virginia, for Petitioner. Mark E. Newcomb, Kelly A. Mosteller, DAVEY & BROGAN, PC, Norfolk, Virginia, for Respondent Sealand Services, Incorporated.

---

**OPINION**

MICHAEL, Circuit Judge:

Arthur L. Brown, a former longshore worker, petitioned for review of a decision of the Benefits Review Board of the U.S. Department of Labor (BRB or Board). Brown passed away after his petition was filed, and Claire Green-Brown, his widow and executrix, has been substituted as petitioner. The challenged BRB decision affirms the administrative law judge's decision that awarded hearing loss compensation to Brown under the Longshore and Harbor Workers' Compensation Act (LHWCA or Act), 33 U.S.C. §§ 901-50, based on an audiogram that did not comply with the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides). We reverse because § 908(c)(13)(E) of the LHWCA mandates that hearing loss compensation be based on hearing loss determinations made in accordance with the AMA Guides. On remand benefits will be calculated based on the one audiogram that complies with the AMA Guides.

I.

Arthur Brown worked as a shipping container repairman for Sealand Services, Inc. (Sealand) for approximately seventeen years before retiring on May 1, 1987. At Sealand Brown worked in a four-bay shop where he was exposed to loud noises from air hammers, impact guns, compressors, and

other sources. Brown filed a timely LHWCA claim for partial disability benefits due to noise-induced hearing loss suffered while he was employed by Sealand. The company agrees that Brown had some work-related hearing loss, but it disputes the extent of Brown's compensable loss. The controversy centers on whether certain audiograms administered to Brown may be used to determine the amount of his compensable hearing loss. The LHWCA requires that hearing loss determinations must be made according to the AMA Guides for evaluating permanent impairment. 33 U.S.C. § 908(c)(13)(E). The AMA Guides, among other things, require that each ear be tested separately at the 500, 1000, 2000, and 3000 hertz frequencies. AMA Guides to the Evaluation of Permanent Impairment § 11.2a, at 247 (5th ed. 2001).

Evidence submitted to the ALJ included the following. Brown's first audiogram was administered on October 1, 1987 (1987 audiogram), five months after his retirement from Sealand. It tested both ears separately at the 500, 1000, 2000, 4000, and 8000 hertz frequencies. The 1987 audiogram reflects a binaural hearing loss of 5.65 percent. A second audiogram was administered on August 9, 1988. In addition to the levels tested by the 1987 audiogram, the second audiogram tested at the 250 hertz frequency. Its results closely track the 1987 audiogram. A third audiogram was administered on April 2, 2003. It tested at the 250, 500, 1000, 2000, 4000, and 8000 hertz frequencies. A fourth audiogram administered on September 2, 2005, tested at the same frequencies. The final audiogram was administered to Brown on October 4, 2005 (October 2005 audiogram), eighteen years after his retirement from Sealand. It tested both ears separately at the same hertz frequencies as the previous tests, but it also included testing at the 3000 hertz frequency. The October 2005 audiogram was the only one that tested at the 3000 hertz frequency, as required by the AMA Guides. The October 2005 audiogram reflects binaural hearing loss of 28.7 percent.

Sealand presented testimony from a medical expert, Paul Lambert, M.D., an otolaryngologist. Dr. Lambert testified that

the 3000 hertz frequency is typically not tested in an audiogram and that it is standard medical practice to substitute 4000 hertz when 3000 is not available. Dr. Lambert, however, could not cite any medical literature that supports substituting the 4000 hertz frequency for the 3000 frequency. Dr. Lambert acknowledged that the 3000 hertz frequency, as opposed to the 4000 frequency, "helps with distinguishing the disability of a hearing loss in background noise." J.A. 134. In other words, according to Dr. Lambert, the 3000 frequency "probably gives a little better reflection of what the day to day disability might be." J.A. 134. Dr. Lambert opined that Brown's increase in hearing loss between the 1987 audiogram and the October 2005 audiogram was not caused by his prior exposure to noise at the Sealand workplace. Rather, Dr. Lambert believed that advancing age was the primary cause of the additional hearing loss. Finally, Dr. Lambert reviewed the records of the 1987 and 1988 audiograms administered to Brown. These tests were accurate, Dr. Lambert concluded, because they were internally consistent, and the results of both tests were essentially the same.

Sealand contended that Brown's compensable hearing loss should be calculated at 5.65 percent based on the 1987 audiogram. Brown contended that his compensable hearing loss should be calculated at 28.7 percent based on the October 2005 audiogram—the only audiogram that complied with the AMA Guides. The ALJ recognized that the 1987 audiogram, which did not test at the 3000 hertz frequency, was not in compliance with the AMA Guides, as required by § 908.13(c)(13)(E) of the LHWCA. The ALJ concluded, however, that an audiogram that complied with the AMA Guides and the statutory conditions in § 908(c)(13)(C) was simply presumptive evidence of the amount of hearing loss sustained as of the date of the test. Nothing in the statute, the ALJ held, precluded consideration of an audiogram that was not in compliance with the AMA Guides if the evidence established that the non-compliant audiogram was a reliable indicator of hearing loss. After crediting Dr. Lambert's testimony that the

1987 audiogram was reliable, the ALJ found that the 1987 audiogram, which shows a binaural hearing loss of 5.65 percent, was "a better indicator of [Brown's] compensable hearing loss than a subsequent audiogram performed 18 years after [his] retirement," which shows a 28.7 percent loss. J.A. 277A. Accordingly, the ALJ awarded compensation based on the 1987 audiogram.

Brown appealed to the BRB. The Board held that the ALJ was not "precluded from crediting the 1987 audiogram due to its lack of technical compliance with the AMA Guides." J.A. 363. In affirming the ALJ's decision, the Board concluded that the ALJ "rationally found that the 1987 audiogram was the best measure of claimant's work-related hearing loss at the time he retired." *Id.* Brown petitioned this court for review of the BRB's decision.

## II.

We must decide the following issue of statutory interpretation: whether 33 U.S.C. § 908(c)(13)(E) requires LHWCA hearing loss compensation to be based on hearing loss determinations made in accordance with the AMA Guides for the evaluation of permanent impairment. Our review is de novo. *Newport News Shipbuilding & Dry Dock Co. v. Pounders*, 326 F.3d 455, 458 (4th Cir. 2003); *see also Newport News Shipbuilding & Dry Dock Co. v. Stallings*, 250 F.3d 868, 871 (4th Cir. 2001) (The BRB's "adjudicatory interpretation of the LHWCA is entitled to no special deference, and is subject to our independent review.").

Section 908(c)(13)(E) provides: "Determinations of loss of hearing *shall be made* in accordance with the guides for the evaluation of permanent impairment as promulgated and modified from time to time by the American Medical Association." 33 U.S.C. § 908(c)(13)(E) (emphasis added). Congress enacted this provision in 1984 to establish uniform standards for determining compensable hearing loss under the LHWCA.

*See* Pub. L. No. 98-426, § 8, 98 Stat. 1639 (1984). Section 908(c)(13)(E) was necessary because the absence of a "single formula [for evaluating] hearing loss claims" under the Act had led to "unpredictab[le] and nonuniform impairment determinations." 130 Cong. Rec. 25,906 (1984) (statement of Rep. Erlenborn). Thus, the purpose of § 908(c)(13)(E) is to ensure that "determinations of hearing loss will be grounded on a uniform external and professionally acceptable basis—the AMA Guides to the Evaluation of Permanent Impairment." *Id.* The AMA Guides are specified because they are "the most widely accepted medical standards and [Congress] wish[ed] to assure that determinations will always be in accordance with the most recently revised edition." H.R. Rep. No. 98-1027, at 28 (1984) (Conf. Rep.), *reprinted in* 1984 U.S.C.C.A.N. 2771, 2778.

We read § 908(c)(13)(E) according to "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992) (interpreting § 33(g) of the LHWCA). The provision unequivocally mandates that determinations of hearing loss "shall be made" according to the AMA Guides. 33 U.S.C. § 908(c)(13)(E). The AMA Guides are equally clear in providing that "the following step[ ] should be taken" in administering an audiogram: "Test each ear separately with a pure-tone audiometer and record the hearing levels at 500, 1000, 2000, and 3000 Hz [hertz]. *It is necessary* that the hearing level for each frequency be determined in every subject." AMA Guides § 11.2a, at 247 (5th ed. 2001) (emphasis added). The same requirements appear in the edition of the AMA Guides in effect at the time of Brown's 1987 audiogram. AMA Guides 154 (2d ed. 1984).

In this case the 1987 audiogram, used by the ALJ to determine Brown's hearing loss and compensation, did not measure hearing at the 3000 hertz frequency as required by the AMA Guides. The second edition of the guides explained that "3,000 Hz is included to provide an accurate assessment of

hearing impairment in a variety of everyday listening conditions." AMA Guides 154 (2d ed. 1984). Sealand's expert, Dr. Lambert, acknowledged that the 3000 hertz frequency "gives a little better reflection of what the day to day disability might be." J.A. 134.

According to the ALJ, an audiogram with accurate and reliable test readings that did not test at the AMA Guides-stipulated 3000 hertz frequency may still be used to determine hearing loss and compensation. The only qualification, the ALJ held, is that such a non-compliant audiogram cannot be offered as "presumptive evidence of the amount of hearing loss" under § 908(c)(13)(C), which provides:

> An audiogram shall be presumptive evidence of the amount of hearing loss sustained as of the date thereof, only if (i) such audiogram was administered by a licensed or certified audiologist or a physician who is certified in otolaryngology, (ii) such audiogram, with the report thereon, was provided to the employee at the time it was administered, and (iii) no contrary audiogram made at that time is produced.

33 U.S.C. § 908(c)(13)(C). Notwithstanding subsection (C), § 908(c)(13)(E) still mandates that all hearing loss determinations must be made in accordance with an audiogram that complies with the AMA Guides. As the BRB recently explained: "an administrative law judge evaluating a claim under [§ 908(c)(13)] may credit an audiogram as determinative evidence of hearing loss so long as it complies with [§ 908(c)(13)(E)]. If the audiogram meets the additional requirements of [§ 908(c)(13)(C)], it may further serve as 'presumptive evidence' of a hearing loss." *R.H. v. Bath Iron Works Corp.*, B.R.B. No. 07-0739, 2008 WL 899271, at *2 (March 28, 2008). The ALJ therefore missed the mark when he determined that the 1987 non-compliant audiogram was only disqualified as presumptive evidence of hearing loss. It was disqualified entirely.

We hold that § 908(c)(13)(E) requires that a hearing loss and compensation determination must be made using an ABA Guides-compliant audiogram. The ALJ therefore erred in relying on the 1987 audiogram to make the determination because that audiogram did not include a test at the 3000 hertz frequency, as required by the AMA Guides.

Our holding means that compensation will be awarded in this case based on the October 2005 audiogram, the only one in the record that complies with the AMA Guides. That audiogram may be used, consistent with Board precedent, even though it was administered eighteen years after Brown retired from Sealand. *See Labbe v. Bath Iron Works Corp.*, 24 B.R.B.S. 159, 1991 WL 55439, at *3 (1991) (affirming a benefits decision in which the ALJ had (1) credited a 1986 audiogram that complied with the AMA Guides and (2) discredited a 1967 audiogram that did not list the credentials of the tester, even though this audiogram was administered closer to the time the claimant had left covered employment).

We grant the petition for review, reverse the BRB's decision, and remand for an award of compensation based on the October 2005 audiogram, which complies with the AMA Guides.

*PETITION FOR REVIEW GRANTED*;
*REVERSED AND REMANDED*