PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
                           *Petitioner,*

            v.

RANDALL L. POUNDERS, SR.;                   No. 00-1321
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
                           *Respondents.*

On Petition for Review of an Order
of the Benefits Review Board.
(98-1573)

Argued: January 22, 2001

Decided: April 14, 2003

Before WIDENER and KING, Circuit Judges, and
David A. FABER, Chief United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Chief Judge Faber wrote the opinion,
in which Judge King joined. Judge Widener wrote a concurring opin-
ion.

## COUNSEL

**ARGUED:** Benjamin McMullan Mason, MASON, COWARDIN &
MASON, Newport News, Virginia, for Petitioner. Julia Mankata,

UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Jonathan H. Walker, Christopher R. Hedrick, MASON, COWARDIN & MASON, Newport News, Virginia, for Petitioner. Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Mark Reinhalter, Senior Appellate Attorney, Laura J. Stomski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

## OPINION

FABER, Chief District Judge:

Newport News Shipbuilding and Dry Dock Company ("Newport News") seeks reversal of a decision of the Benefits Review Board (the "BRB") denying relief under section 8(f) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 ("LHWCA"). For the reasons discussed below, we affirm the decision of the BRB.

I.

In January 1997, Randall Pounders ("Pounders") was diagnosed with asbestosis. A pulmonary function test revealed a fifteen percent permanent partial whole person impairment as measured by the *AMA Guides to the Evaluation of Permanent Impairment*, 4th ed. His employer, Newport News, admits that he was exposed to asbestos during his employment, but contends that he had a pre-existing lung disease which materially and substantially contributed to his ultimate disability.

As early as 1979, pulmonary function tests performed on Pounders revealed restrictive lung disease. This condition continued to appear on such tests conducted from 1980 through 1984. In 1996, Pounders was diagnosed with diabetes, hypertension and pleural fibrosis. Pounders retired on December 31, 1995, more than one year before he was diagnosed with asbestosis.

On July 30, 1998, the Administrative Law Judge ("ALJ") filed his original decision and order denying the § 8(f) claim of Newport

News. Almost one year later, on July 28, 1999, the BRB reversed and remanded the case for further consideration in view of the standard established in *Director, OWCP v. Newport News Shipbuilding and Dry Dock Co. (Carmines)*, 138 F.3d 134 (4th Cir. 1998). On reconsideration, however, the BRB reversed itself and affirmed the original decision of the ALJ.

II.

Section 8(f) of the LHWCA, 33 U.S.C. § 908(f), provides in part as follows:

> In . . . cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide . . . compensation for one hundred and four weeks only.

After the one hundred four-week period has passed, the Office of Workers' Compensation Programs ("OWCP"), which administers a special fund for that purpose, is responsible for disability payments under § 8(f).

An employer who seeks to limit liability for an employee's permanent partial disability under § 8(f) must establish three elements: (1) that the ultimate disability is caused in part by a pre-existing partial disability; (2) that the pre-existing disability was manifest to the employer prior to the work-related injury; and (3) that the ultimate disability materially and substantially exceeded the disability that would have resulted from the work-related injury alone, in the absence of the pre-existing condition. *See Director, OWCP v. Newport News Shipbuilding and Dry Dock Co. (Carmines)*, 138 F.3d 134, 138-39 (4th Cir. 1998). *See also Director, OWCP v. Newport News Shipbuilding and Dry Dock Co. (Harcum)*, 8 F.3d 175, 182-83 (4th Cir. 1993), *aff'd on other grounds*, 514 U.S. 122 (1995).

The LHWCA sets out the applicable standard of review for this case in § 921(b)(3). When under review by the BRB, the ALJ's fac-

tual findings are deemed conclusive "if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). This court has held that substantial evidence is "more than a scintilla but less than a preponderance." *Elliott v. Adm'r, Animal & Plant Health Inspection Serv.*, 990 F.2d 140, 144 (4th Cir. 1993). Additionally, as stated in *Newport News Shipbuilding & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988), the ALJ's findings "may not be disregarded on the basis that other inferences might have been more reasonable." Rather, "deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." *Id.* Legal determinations are reviewed *de novo*. This includes the standard by which the ALJ determines entitlement to § 8(f) relief. *See Carmines*, 138 F.3d at 141.

III.

There is no disagreement in this case that the first two conditions necessary for relief under § 8(f) are met. The parties agree that Pounders had a pre-existing disability. The second element, manifestation, is not required in cases where the worker suffers from a post-retirement occupational disease, as is the case with Pounders. The sole issue involves the weight of the evidence with regard to the third requirement, commonly referred to as the "contribution" element.

To satisfy the contribution element in this case, Newport News relied upon the parties' stipulation that Pounders has a fifteen percent permanent partial disability, which is attributed to both his pre-existing disability and his work-related asbestosis, and the opinion of James Reid, a company doctor, who stated that if Pounders had only the work-related asbestosis, his impairment rating would be at least fifteen percent less.[1] Dr. Reid explained his conclusion and the basis for it as follows:

> Mr. Pounders' AMA rating and disability are not caused by his alleged asbestosis alone, but rather his AMA rating and

---

[1]Two other doctors reviewed the records and signed off on a form indicating they agreed with Dr. Reid's opinion. Neither examined Pounders. The ALJ, correctly in our view, gave little weight to these assessments. J.A. at 40.

disability are materially and substantially contributed to, and materially and substantially hastened by his pre-existing pleural fibrosis/restrictive lung disease and hypertensive cardiovascular disease-diabetes. Since the 1980's, hypertension has been known to reduce pulmonary function. This is hardly surprising since the blood in the vascular system enters the lungs, and oxygen is transferred to the blood from the lungs. A January, 1995 article in *Chest*, a leading medical journal, based on a grant from the National Heart, Lung and Blood Institute of NIH, documents the effect of hypertension on pulmonary function. Hypertension, which Mr. Pounders had, causes a three percent (3%) drop in the FEVI and a three percent (3%) drop in the FVC. On average, each one percent (1%) drop in FEVI or FVC results in a one percent (1%) increase in the AMA rating. Of course, the more longstanding or severe the cardiovascular condition, the greater the drop in FEVI/FVC and hence the greater the increase in the AMA rating. Mr. Pounders' Shipyard pulmonary function tests as early as 1979 showed a 10% AMA rating disability. Thus, if Mr. Pounders merely had asbestosis, without his pre-existing disabilities, his AMA rating would be a least 15% less.

J.A. at 18.

The BRB concluded that the evidence of contribution fell short of the standard for § 8(f) relief established by this court in *Carmines*. Carmines was exposed to asbestos at the Newport News facility over a thirty-year period. *See Carmines*, 138 F.3d at 137. He was diagnosed with pulmonary asbestosis in 1990 and deemed to have a twenty-five percent to thirty percent impairment of the whole person. *See id.* He also had substantial pre-existing scarring of the lungs due to pleurisy. *See id.* at 139. Dr. Hall, a company physician for Newport News, opined on the basis of old x-rays that Carmines' pre-existing disability accounted for about eighteen percentage points of the total disability, which was twenty-eight percent. *See id.* at 140. He concluded that Carmines' asbestosis accounted for the difference — ten percent. *See id.*

This court determined in *Carmines* that Dr. Hall's evidence was insufficient to meet the contribution requirement and show the claim-

ant's total disability to be materially and substantially greater than the disability resulting from the work-related condition alone. *See Carmines*, 138 F.3d at 134, 142 (4th Cir. 1998). The court pointed out that Carmines' asbestosis standing alone could account for all of his disability. *See id.* at 143. In the absence of expert evaluation of the degree of disability covered by the asbestosis separate and apart from the impact of the pre-existing condition, the court said, there was no basis for a comparison which would reveal whether the prior injury materially and substantially contributed to the total impairment. *See id.* at 143-44. To satisfy the third requirement under § 8(f), the court held that, "an employer must quantify the type and extent of the disability that the claimant would have suffered without the pre-existing condition." *Id.* at 139. It is not enough, as Dr. Hall did in *Carmines*, to simply calculate the total current disability and subtract from it the disability resulting from the pre-existing condition.

In weighing any application for § 8(f) relief the court is faced with competing policy goals. The purpose of § 8(f) is to encourage reemployment of handicapped workers. *See Lawson v. Suwanee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949). If employers were charged with the entire cost of second injuries under the LHWCA, there would be a powerful disincentive to hire the handicapped. On the other hand, employers should be held responsible for the full cost of injuries and illnesses which occur on their watch and should not be permitted lightly to transfer such burdens to the special fund.

The problem is exacerbated by the fact that the adversarial system breaks down to a degree with regard to § 8(f) claims. The evidentiary hearing in such cases may involve only the employer and the claimant. The claimant seeks to be compensated for his work-related condition. He probably does not care whether he is paid out of the general fund, with its higher cost to his employer, or out of the special § 8(f) fund. The employer, on the other hand, operates under a significant financial incentive to throw as many cases as it can into the special fund. It is only after the initial hearing is concluded that the Director, OWCP — the person with the interest in protecting the integrity of the special fund — enters the picture. The record made at the original hearing may as a consequence be tilted in favor of § 8(f) relief. The problem is complicated by the fact that medical evidence relating to the contribution requirement is frequently provided by company doc-

tors. Human nature as it is, company doctors, however honest, are likely to give the close calls to those who pay their salaries.

In this context, the rigorous standard of *Carmines* makes good sense and is supported by cases from other circuits. In *Sealand Terminals, Inc. v. Gasparic*, 7 F.3d 321, 323 (2d Cir. 1993) (*per curiam*), the court held that § 8(f) relief is precluded unless the evidence establishes that the work-related injury alone would not have caused the workers' total disability. The United States Court of Appeals for the First Circuit, in *Director, OWCP v. Bath Iron Works Corp.*, 129 F.3d 45 (1st Cir. 1997), followed this court's opinion in *Harcum*, and held that, to justify § 8(f) relief, an employer must show the degree of disability attributable to the work-related injury alone, "so that this amount may be compared to the total percentage of the partial disability for which coverage under the LHWCA is sought." 129 F.3d at 51; *see also Two "R" Drilling Co., Inc. v. Director, OWCP*, 894 F.2d 748 (5th Cir. 1990).

Applying the *Carmines* standard here, we find the evidence insufficient to support § 8(f) relief. We agree with the BRB that Dr. Reid's methodology fails to satisfy *Carmines*. Dr. Reid concluded that Pounders' asbestosis, without the pre-existing condition, would result in an AMA rating of at least fifteen percent less than the rating which results from the two conditions combined. He thus places the degree of disability from the asbestosis alone at less than the total disability. He gets there, however, by using a methodology strikingly similar to the discredited "subtraction" method employed by Dr. Hall in *Carmines*. Dr. Reid begins with the normal impact of hypertension on breathing and reduces the amount of the total disability to account for this. He does not, as *Carmines* requires, make an assessment of the impact of the asbestosis standing alone.[2] In the absence of such an assessment, the evidence fails to satisfy the *Carmines* test.

---

[2]Judge Smith of the BRB, in his concurring opinion below, points out the difficulty which confronts a doctor called upon to make the assessment required by *Carmines* in a case involving successive lung diseases. The difficulty of making the assessment in isolated cases, however, does not compel us to adopt a different rule.

Accordingly, the decision of the BRB is

*AFFIRMED*.

WIDENER, Circuit Judge, concurring:

### I.

While the differences between the earlier permanent partial disability and the subsequent work-related disability are so marked in the *Ward* case that I think the *Harcum-Carmines* rule should have no precedential application in that case, the facts in the case at hand are so similar to *Carmines* in the measurement of disability by the AMA tables, as required by statute, 33 U.S.C. § 904(c)(23), that they require the result the majority obtains as a matter of circuit precedent, and for that reason alone, I concur in the result. I respectfully disassociate myself from the opinion of the majority with respect to company doctors.

### II.

Whether we agree with Coke, that reason is the life of the law, or with Holmes, that the life of the law is experience, the *Harcum-Carmines* rule, in my opinion, follows neither. The statute 33 U.S.C. § 908(f) requires both a pre-existing "permanent partial disability" to which must be added a "subsequent injury" which is work-related, or else the statute has no application. *Carmines* requires a quantification of the subsequent injury without reference to the earlier injury, a condition which never existed. So we are requiring physicians to answer a purely hypothetical question based on facts which never existed. *Carmines forbids* a physician from giving an opinion as to the difference between two known quantities, the earlier and subsequent disabilities, but *requires* a physician to express an opinion as to differences between a known quantity, the subsequent disability, and an unknown earlier disability. In my opinion, this is a not tenable, as Judge Smith points out in his administrative concurrence.

### III.

Left to my own devices, I would decide the case on the reasoning in the concurring administrative opinion in this case of Judge Smith,

an administrative appeals judge, which I earnestly commend to the court and copy in full below:

SMITH, Administrative Appeals Judge, concurring:

I concur in the result reached by my colleagues. I write separately to express my uncertainty as to how an employer can satisfy the contribution requirement in a Section 8(c)(23) case in a manner which meets the expectations of the Fourth Circuit. In a case where the award is based solely on the percentage of permanent impairment, it places a great burden on a doctor to examine a claimant and rate, with certainty, his loss due to his work-related injury without regard to his condition as a whole, which includes his pre-existing condition, and without reliance on percentages.

In this case, the Board stated that calculation of the percent of impairment caused by the pre-existing disability merely requires the computation of 15 percent of the 15 percent overall rating (15 percent of 15 percent equals 2.25 percent. This resulted in claimant's pre-existing disability being at least a 2.25 percent impairment. Subtracting 2.25 percent from the overall 15 percent impairment results in an impairment rating for the asbestosis alone of 12.75 percent. Therefore, the Board concluded that the administrative law judge had enough information to make the comparison between claimant's disability with and without the pre-existing disability (15 percent versus 12.75 percent). *Pounders*, slip op. at 3. Since claimant's entitlement is governed by Section 8(c)(23), his compensation award is based on his percentage of impairment alone.[1] Under Section 8(c)(23), quantifying

---

[1]Section 8(c)(23) is an exception to the rule that disability under the Act rests on an economic foundation. Section 2(10) of the Act states:

"Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment; but such term shall mean *permanent impairment*, determined (to the extent

the percentages is equivalent to quantifying the disability, and the record contains evidence of claimant's percentages of impairment both before and after his work-related injury. The Board thus reasoned that the record contained sufficient information to permit a comparison between claimant's ultimate degree of disability and the degree of disability he would sustain without the pre-existing disability.

As the majority opinion points out, the Fourth Circuit disapproved this method of determining whether the claimant's disability is due solely to the work injury and whether the pre-existing disability materially and substantially worsened the ultimate disability. *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co. [Carmines]*, 138 F.3d 134, 32 BRBS 48(CRT) (4th Cir. 1998). Although the Fourth Circuit stated in *Carmines* that the seriousness of a pre-existing condition could be irrelevant to a claimant's overall disability, as the work-related injury alone could give rise to the compensable disability, the examples it used to explain this conclusion were dissimilar to the case before it, and they are dissimilar to the instant case as well. For instance, the *Carmines* court stated that if an employee with a paralyzed leg were to have the leg amputated due to a work-related injury, the employee would be no worse off than he was before, that is, he would have a paralyzed leg-stump instead of a paralyzed leg. In either case, he would not have use of the leg. Thus, Section 8(f) relief would not be available to the

---

covered thereby) under the guides to the evaluation of permanent impairment promulgated and modified from time to time by the American Medical Association, in the case of an individual whose claim is described in section 910(d)(2) of this title.

33 U.S.C. § 902(10) (emphasis added): Section 10(d)(2) provides an average weekly wage for employees retired on the date of awareness in occupational disease cases, and Section 8(c)(23), 33 U.S.C. § 908(c)(23), provides that benefits for such individuals are computed using the percentage of permanent impairment.

employer because it could not establish that the pre-existing paralysis made the ultimate disability "materially and substantially greater." *Carmines*, 138 F.3d at 139, 32 BRBS at 51(CRT). Further, the court addressed *Director, OWCP v. Luccitelli*, 964 F.2d 1303, 26 BRBS 1(CRT) (2d Cir. 1992), wherein the claimant had a pre-existing disability to his right knee and suffered a work-related injury to his left knee. *Carmines*, 138 F.3d at 139, 143, 32 BRBS at 51, 55(CRT. The Fourth Circuit noted that the *Luccitelli* court stated that the existence of the pre-existing condition alone was insufficient to entitle employer to Section 8(f) relief as claimant's work-related injury was itself totally disabling.

Neither *Carmines* nor the instant case, however, involves injuries resulting in economic disability or weighing the relative contributions of injuries to different body parts to the whole disability.[2] Rather, they involve the relative contributions of two lung conditions where the ultimate disability is compensated pursuant to Section 8(c)(23) based on physical impairment alone.[3] In this instance, quantification of the impairment is the sole measure of disability. 33 U.S.C. §§ 902(10), 908(c)(23); *see* n. 2, *supra*. If, using the percentages from *Carmines*, a credible physician states that claimant's compensable respiratory impairment is 28 percent, and breaks this down further by stating that 18 percentage points of this impairment is due to the pre-existing condition and 10 percentage points is due to the work injury, the administrative law judge should be entitled to conclude that the disability, here a respiratory condition compensable

---

[2]Moreover, in *Luccitelli*, the claimant had a permanent *total* disability and the question of whether his ultimate disability was made "materially and substantially greater" by his pre-existing condition did not arise. 33 U.S.C. § 908(f)(1); *Luccitelli*, 964 F.2d at 1303, 26 BRBS at 1(CRT).

[3]*But see Louis Dreyfus Corp. v. Director, OWCP*, 125 F.3d 884, 31 BRBS 141(CRT) (5th Cir. 1997) (previous rating insufficient by itself to show contribution where evidence established that ultimate disability may not have been made "materially and substantially greater" by the pre-existing condition).

based solely on a percentage of respiratory impairment, is not due solely to the work injury.[4] The "degree of disability" due to the work-related injury alone, as required by the *Carmines* court, is readily apparent from the percentages. The court's statement that, under the facts of that case, or the instant case, the claimant could be just as "disabled," that is, impaired within the meaning of the American Medical Association *Guides to the Evaluation of Permanent Impairment, see* 33 U.S.C. § 902(10), with or without the pre-existing disability, is not tenable.[5]

ROY P. SMITH
Administrative Appeals Judge

[4]The administrative law judge, of course, also would have to determine if the ultimate disability is materially and substantially greater because of the pre-existing disability.

[5]This is especially true because in order to be entitled to Section 8(f) relief in a case where the claimant is compensated pursuant to Section 8(c)(23) for a respiratory impairment, the pre-existing disability must be a condition that compromises respiratory function. *Director, OWCP, v. Bath Iron Works Corp.*, 129 F.3d 45, 31 BRBS 155(CRT) (1st Cir. 1997); *Adams v. Newport News Shipbuilding & Dry Dock Co.*, 22 BRBS 78 (1989).