PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
                            *Petitioner,*

            v.

LARRY D. WARD; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
                            *Respondents.*

No. 00-1978

On Petition for Review of an Order
of the Benefits Review Board.
(99-1054)

Argued: January 22, 2001

Decided: April 14, 2003

Before WIDENER and KING, Circuit Judges, and
David A. FABER, Chief United States District Judge for the
Southern District of West Virginia, sitting by designation.

Petition for review denied by published opinion. Judge King wrote
the opinion, in which Chief Judge Faber joined. Judge Widener wrote
a dissenting opinion.

## COUNSEL

**ARGUED:** Lawrence Philip Postol, SEYFARTH SHAW, Washing-
ton, D.C., for Petitioner. Andrew David Auerbach, UNITED STATES

DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Mark Reinhalter, Senior Attorney, Miriam D. Ozur, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

---

## OPINION

KING, Circuit Judge:

Larry Ward twice injured his back while at work, once in 1987 and again in 1989. He receives "permanent partial disability" benefits from his employer, Newport News Shipbuilding & Dry Dock Company ("Newport News"), pursuant to §§ 4 and 8(c)(21) of the Longshore and Harbor Workers' Compensation Act (the "Act" or "LHWCA").[1] In 1997, Newport News filed a claim for relief under § 8(f) of the Act with the Director of the Office of Workers' Compensation Programs (the "Director"). Pursuant to § 8(f), an employer's duty to pay benefits is limited to a two-year period, *if* the employer can establish that an employee's work-related injury was made "materially and substantially greater" by a pre-existing disability. 33 U.S.C. § 908(f).

On July 1, 1999, an Administrative Law Judge of the Department of Labor (the "ALJ") denied Newport News's request for § 8(f) relief. *Ward v. Newport News Shipbldg. & Dry Dock Co.*, 97-LHC-2140, Decision and Order Awarding Benefits and Denying 8(f) Relief (July 1, 1999) (the "ALJ Decision"). On July 11, 2000, the Department of Labor's Benefits Review Board (the "BRB") affirmed the ALJ Decision. *Ward v. Newport News Shipbldg. & Dry Dock Co.*, 99-1054, Decision and Order (July 11, 2000) (the "BRB Decision"). Newport News has now petitioned for our review, pursuant to § 21(c) of the Act, asserting that the BRB Decision is in error. As explained below, we deny the petition for review.

---

[1]The Act is codified at 33 U.S.C. §§ 901-950.

I.

A.

On December 11, 1987, Ward, a welder employed by Newport News in the shipyards of eastern Virginia, herniated the L4-L5 disc in his back (the "1987 Injury"). On March 31, 1988, Ward underwent back surgery to repair the 1987 Injury. In September of that year, Ward returned to work at Newport News with work restrictions, and he performed light duty work for approximately two months. Ward was again unable to work from November 23, 1988, until May 15, 1989, at which point he again returned to light duty work at the shipyards.

While at work a month later, however, on June 16, 1989, Ward again injured his back while pulling on heavy welding lines (the "1989 Injury"). On this occasion, Ward herniated an entirely different disc in his back, the L5-S1 disc. The 1989 Injury required Ward to undergo, on August 8, 1989, another surgical procedure. Although Ward was only partially disabled after his second back surgery, he was unable to find work with Newport News that he could adequately perform. Consequently, he sought disability benefits under the Act. Newport News initially agreed to pay benefits to Ward, but it later sought § 8(f) relief from its obligation to compensate Ward for his disability.[2]

After Newport News filed its claim for § 8(f) relief on May 1,

---

[2]Newport News challenged its obligation to pay continuing disability benefits to Ward by filing a claim for § 8(f) relief with the Director. Section 8(f) provides that:

> [in] cases in which the employee has a . . . disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide . . . compensation for one hundred and four weeks only.

33 U.S.C. § 908(f)(1). Once 104 weeks have elapsed, benefits are paid from a special fund established by Congress and administered by the Secretary of Labor. *See id.* §§ 908(f)(2)(A), 944.

1997, the claim was referred to the ALJ for disposition. During proceedings before the ALJ, the parties agreed to stipulate certain relevant facts, and neither Ward nor the Director presented any evidence. As explained below, Newport News presented evidence to the ALJ from two physicians, Dr. Reid and Dr. Garner, both of whom had treated Ward's back injuries.

B.

Before seeking § 8(f) relief, Newport News requested a report from Dr. Reid, the Newport News company physician who had treated both of Ward's back injuries. On May 1, 1997, the day Newport News filed for § 8(f) relief, Dr. Reid detailed his views regarding Ward's disability in a two-page letter to Newport News, to which he attached six supporting exhibits (collectively, the "1997 Reid Report"). Newport News then submitted the 1997 Reid Report to the ALJ in support of its claim for § 8(f) relief.

In the 1997 Reid Report, Dr. Reid asserted, *inter alia*, that:

- "Mr. Ward's disability is not caused by his December 11, 1987 back injury alone, but rather his disability is materially contributed to, and made materially and substantially worse by his aggravation injury on June 16, 1989";

- "Neither the 1987 injury, nor the 1989 injury, alone would have disabled Mr. Ward from performing light duty Shipyard work";

- "[If Ward had] a normal back when he suffered the 1989 injury, he . . . would have been able to return to light duty Shipyard work"; and

- "[T]he combination of the two injuries and two surgeries, and their cumulative effect, have disabled Mr. Ward from even light duty Shipyard work."

Within the exhibits in the 1997 Reid Report were three work restriction reports of Dr. Reid, plus a letter and two office memoranda of

Dr. Garner. These materials had been prepared during the course of Ward's treatment and surgeries.

Newport News thereafter submitted additional evidence to the ALJ from Dr. Garner, who had performed the 1988 and 1989 back surgeries. On January 7, 1999, Newport News forwarded the 1997 Reid Report to Dr. Garner, accompanied by a transmittal letter (the "Transmittal Letter"). The Transmittal Letter provided Dr. Garner the option of indicating whether he "agree[d] with Dr. Reid's opinion as expressed in his May 1, 1997 Report concerning Mr. Ward." Dr. Garner indicated his agreement with the 1997 Reid Report by signing and dating the Transmittal Letter on March 22, 1999, without further explanation, and then returning it to Newport News. In further support of its § 8(f) claim, Newport News submitted to the ALJ a November 7, 1990, memorandum of Dr. Garner, relating to Ward's 1989 Injury.

### C.

After analyzing the available evidence, particularly the 1997 Reid Report and the Transmittal Letter, the ALJ determined that Newport News was not entitled to § 8(f) relief. Specifically, the ALJ concluded that Newport News had failed to quantify the portion of Ward's disability that was due to his 1989 Injury alone. In reaching this conclusion, the ALJ decided that the opinions of Drs. Reid and Garner failed to justify an award of § 8(f) relief to Newport News because they lacked sufficient credibility and failed to provide the ALJ with an opportunity to "examine the logic" and "evaluate the evidence" upon which the opinions were based. ALJ Decision at 6. In fact, the ALJ found that "with the limited evidence provided by the Employer," it was "impossible" to make an appropriate determination under the controlling standard enunciated in *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.* (*Carmines*), 138 F.3d 134, 140 (4th Cir. 1998). ALJ Decision at 7. Consequently, the ALJ denied § 8(f) relief.

Newport News appealed the ALJ Decision to the BRB. On July 11, 2000, the BRB ruled that substantial evidence supported the ALJ's conclusion that Newport News had failed to prove its entitlement to § 8(f) relief. The BRB agreed that Newport News "did not quantify [the] disability due to the June 1989 injury alone." BRB Decision at

4. In so ruling, the BRB concluded, as had the ALJ, that the evidence offered by Newport News failed to enable the ALJ to "examine the logic" and "evaluate the evidence" of the 1997 Reid Report. Accordingly, it affirmed the ALJ. On August 21, 2000, Newport News petitioned this Court for review of the BRB Decision. We possess jurisdiction pursuant to 33 U.S.C. § 921(c).

## II.

In evaluating a decision of the BRB, we must determine "whether the [BRB] observed its statutorily-mandated standard for reviewing the ALJ's factual findings." *Newport News Shipbldg. and Dry Dock Co. v. Stallings*, 250 F.3d 868, 871 (4th Cir. 2001) (quotations and citations omitted). Pursuant to § 21(b)(3) of the Act, the BRB must assess an ALJ's factual findings to determine whether they are "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3).

We have consistently described substantial evidence as "more than a scintilla but less than a preponderance." *Newport News Shipbldg. and Dry Dock Co. v. Faulk*, 228 F.3d 378, 380-81 (4th Cir. 2000) (citing *Elliott v. Adm'r, Animal & Plant Health Inspection Serv.*, 990 F.2d 140, 144 (4th Cir. 1993)). Furthermore, the findings of an ALJ "may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." *Newport News Shipbldg. & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988).

## III.

## A.

Our precedent with respect to § 8(f) claims is pertinent here, and it governs our disposition of this proceeding. In the early 1990s, in *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.* (*Harcum I*), 8 F.3d 175, 182 (4th Cir. 1993), we articulated the test for whether and when § 8(f) relief is appropriate in a permanent partial disability situation. The *Harcum I* rule was then restated in *Car-*

*mines*, when Judge Murnaghan explained that § 8(f) limits an employer's liability for an employee's permanent partial disability benefits to two years, *if* the employer can affirmatively establish three elements. He defined those elements as follows:

> First, "that the ultimate disability [was] not caused solely by the work-related injury, but [was] also caused in part by a pre-existing partial disability";
>
> Second, "that the pre-existing disability was manifest to the employer prior to the work-related injury"; and
>
> Third, and of importance here, "that the ultimate permanent partial disability materially and substantially exceeded the disability that would have resulted from the work-related injury alone, in the absence of the pre-existing condition" (the "Contribution Element").

*Carmines*, 138 F.3d at 138-39 (citing *Harcum I*, 8 F.3d at 182-83).

An employer can satisfy this third element, the Contribution Element, only if it can quantify the type and extent of disability the employee would have suffered absent the pre-existing disability. *Carmines*, 138 F.3d at 139 ("In other words, an employer must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury."). As Chief Judge Ervin observed in *Harcum I*, the quantification aspect of the Contribution Element provides an ALJ with "a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater" than the disability the employee would have suffered from the second injury alone. *Harcum I*, 8 F.3d at 185-86, *cited in Carmines*, 138 F.3d at 139. Importantly, in assessing whether the Contribution Element has been met, an ALJ may not "merely credulously accept the assertions of the parties or their representatives, but must examine the logic of their conclusions and evaluate the evidence upon which their conclusions are based." *Carmines*, 138 F.3d at 140.

In *Harcum I*, the BRB had determined that § 8(f) relief was available to an employer when an employee's pre-existing disability and

his subsequent injury combine "to cause a greater degree of impairment than that caused by the second injury alone." *Harcum I*, 8 F.3d at 183. We held that the ALJ and the BRB had applied an incorrect standard for § 8(f) relief because they had failed to consider whether Harcum's ultimate disability was "substantially and materially greater" than the disability he would have suffered from the second injury alone. Therefore, in *Harcum I*, we remanded the § 8(f) claim to the ALJ for further consideration regarding the Contribution Element. *Id.* at 184-86.

On remand, Newport News presented evidence to the ALJ through a vocational rehabilitation specialist. This evidence demonstrated that, if Harcum had suffered his second injury absent his pre-existing disability, he would have been capable of earning $6.00 per hour. However, with both injuries, he was only capable of earning $3.80 per hour, and he was not capable of performing several jobs for which he would have been otherwise qualified. Thus, Newport News contended that Harcum's pre-existing disability caused his ultimate disability to reduce Harcum's wage earning capacity by $2.20 per hour, a thirty-six percent decrease, and that it was thus entitled to § 8(f) relief. The ALJ denied § 8(f) relief, primarily because Newport News did not present any medical evidence. The BRB then affirmed the ALJ's decision.

In our review of the BRB's decision after *Harcum I*'s remand, we determined that Newport News was entitled to § 8(f) relief. *Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP* (*Harcum II*) 131 F.3d 1079, 1081 (4th Cir. 1997). In reaching this conclusion and in reversing the BRB, we observed that medical evidence, although often utilized, is not essential for an employer's satisfaction of the Contribution Element. We then decided that the vocational evidence sufficiently quantified what Harcum's injury would have been absent the pre-existing injury. *Id.* In fact, in *Harcum II*, we observed that the evidence presented by Newport News was of the type contemplated by *Harcum I* in its discussion of the Contribution Element. *Id.* at 1083.

Then, in 1998, in *Carmines*, we again considered an employer's claim for § 8(f) relief. As in *Harcum II*, the issue in *Carmines* was whether the evidence presented by Newport News had satisfied the

quantification aspect of the Contribution Element. *Carmines*, 138 F.3d at 138. In *Carmines*, Callis Carmines had been diagnosed with pulmonary asbestosis and was receiving disability benefits from Newport News. Newport News sought § 8(f) relief, asserting that the asbestosis was made substantially and materially greater by his pre-existing condition. Newport News had presented evidence from Dr. Hall, a Newport News physician, who determined that Carmines's ultimate disability was twenty-eight percent. He also opined that Carmines's pre-existing condition resulted in a partial disability of eighteen percent. Thus, by subtracting eighteen from twenty-eight, Dr. Hall concluded that Carmines's disability would have been only ten percent in the absence of his pre-existing condition. Newport News thus asserted that, because Carmines's ultimate disability was eighteen percent higher than it would have been from his second injury alone, it was entitled to § 8(f) relief. *Id.* at 143. The ALJ agreed that Newport News was entitled to § 8(f) relief, and the BRB affirmed.

In our *Carmines* decision, however, we rejected this approach. Instead, we ruled that it was not appropriate to simply subtract Carmines's pre-existing disability from his ultimate disability to determine whether the ultimate disability was "materially and substantially greater" than that caused by the second injury alone. Judge Murnaghan reasoned that, even though Carmines's pre-existing condition led to an eighteen percent disability, Newport News had failed to establish that his second injury would have resulted in less than a twenty-eight percent disability had it occurred alone. *Id.* at 142-43. As Judge Murnaghan observed, Newport News was obliged, in order to satisfy § 8(f), to present evidence regarding the degree of disability that would have resulted from the second injury alone. "Without such evidence, the mere assertion by the employer's in-house physician that the . . . ultimate disability was made materially and substantially worse by the pre-existing conditions is not sufficient to warrant" § 8(f) relief. *Id.* at 144. Thus, we reversed the BRB's determination that Newport News was entitled to § 8(f) relief. *Id.*

With these controlling principles in mind, we now turn to Ward's injuries and to whether the ALJ's denial of the Newport News claim for § 8(f) relief is supported by substantial evidence.

B.

We begin our assessment of Newport News's petition for review by acknowledging that Newport News has satisfied the first two elements of the test for § 8(f) relief. The only remaining issue is whether substantial evidence supports the ALJ's decision that Newport News failed to satisfy the Contribution Element of its § 8(f) claim.[3]

1.

In assessing whether the ALJ Decision is supported by substantial evidence, we first look to the 1997 Reid Report. The ALJ concluded that this Report failed to satisfy the Contribution Element of the § 8(f) test because it did not sufficiently quantify the portion of Ward's 1989 Injury that would have resulted in the absence of the 1987 Injury. ALJ Decision at 6. To the extent that the 1997 Reid Report compared Ward's 1989 Injury to the injury he would have suffered had the 1987 Injury not occurred, the ALJ found that he was unable to "examine the logic" and "evaluate the evidence" underlying those comparisons. *Id.* Hence, the ALJ was unable to determine whether Ward's 1989 Injury was "materially and substantially greater" than

---

[3] Newport News claims that the ALJ was obliged to accept its evidence because neither the Director nor Ward offered any contradictory evidence. However, as the ALJ and the BRB correctly noted, we held in *Carmines* that it is "irrelevant" that evidence may be uncontradicted. *Carmines*, 138 F.3d at 142. First, the burden of proof is on the employer to establish by credible, sufficient, and reliable evidence that it is entitled to § 8(f) relief. Second, in § 8(f) cases, the evidence supporting such relief is frequently provided by company doctors, such as Dr. Reid. "Human nature as it is, company doctors, however honest, are likely to give close calls to those who pay their salaries." *Newport News Shipbldg. & Dry Dock Co. v. Pounders*, No. 00-1321 (4th Cir. Apr. 14, 2003); *see also Newport News Shipbldg. & Dry Dock Co. v. Winn*, No. 00-1815 (4th Cir. Apr. 14, 2003) ("Additional difficulties result from the frequent appearances of company doctors providing opinions for an employer who has an incentive to try to get as many cases as possible dumped into the special fund."). Finally, we have consistently recognized that "[a] physician's statement . . . is not conclusive of the ultimate fact in issue." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974).

the disability Ward would have suffered in the absence of his 1987 Injury.

Newport News contends that the ALJ could have examined the logic and evaluated the evidence underlying the 1997 Reid Report such that its evidence satisfied the standards for § 8(f) relief, articulated by *Harcum I* and *Carmines*. Thus, Newport News maintains that had the ALJ performed a thorough examination of that Report and the other available evidence, he would have found it sufficient to warrant § 8(f) relief.[4] Having considered the record as a whole, we disagree with Newport News: the ALJ Decision is supported by substantial evidence.

In the 1997 Reid Report, Dr. Reid asserted that "[n]either the 1987 injury, nor the 1989 injury, alone would have disabled Mr. Ward from performing light duty Shipyard work." Dr. Reid also maintained that "[i]f he [had] a normal back when he suffered the 1989 injury, he . . . would have been able to return to light duty Shipyard work. However, the . . . cumulative effect [of the injuries] have disabled Mr. Ward from even light duty Shipyard work." Like Dr. Reid's opinions in *Newport News Shipbuilding & Dry Dock Co. v. Cherry*, No. 00-1279 (4th Cir. Apr. 14, 2003), his assessments of Ward's injuries constitute the type of evidence that *Harcum I* and *Carmines* deemed relevant to the quantification aspect of the Contribution Element. *See Cherry*, No. 00-1279 (concluding that similar statement by Dr. Reid was correct type of evidence for satisfying quantification aspect).[5]

---

[4]Newport News maintains that the ALJ misapplied *Carmines*. Specifically, Newport News contends that the ALJ cannot, consistent with *Carmines*, reject a "straightforward logical opinion" of a treating physician. As we have made clear, however, an ALJ is not to blindly accept the mere assertions of the parties, but must "examine the logic" and "evaluate the evidence" underlying those assertions.

[5]In addition to this decision in *Ward*, today we also decide three other LHWCA cases regarding the limitation on employer liability contained in § 8(f). *Newport News Shipbldg. & Dry Dock Co. v. Cherry*, No. 00-1279 (4th Cir. Apr. 14, 2003); *Newport News Shipbldg. & Dry Dock Co. v. Pounders*, No. 00-1321 (4th Cir. Apr. 14, 2003); *Newport News Shipbldg. & Dry Dock Co. v. Winn*, No. 00-1815 (4th Cir. Apr. 14, 2003).

Unfortunately for Newport News, however, Dr. Reid's assertions are generalized and his overall conclusion lacks any supporting explanation. In particular, his statement that Ward would have been able to "return to light duty Shipyard work" *if* he had suffered only one of his back injuries, is conclusory and lacks evidentiary support. Indeed, Dr. Reid's statements are far different from the "objective quantification" and clear descriptions that were present in *Harcum II*. 131 F.3d at 1082. As the ALJ found, Dr. Reid "does not refer to any evidence justifying [his] conclusion, nor does he explain how he arrived at it." ALJ Decision at 7.[6]

In attempting to explain Dr. Reid's assertions, Newport News points to Dr. Reid's conclusion in the 1997 Reid Report that Ward's 1987 Injury and surgery "rates a minimum 5% permanent disability rating" under the "AMA Guides."[7] However, both the BRB and the ALJ concluded that, although Dr. Reid believed that Ward suffered a five percent disability following his 1987 Injury, Dr. Reid failed to assess the level of Ward's disability that would have resulted from the 1989 Injury alone. We agree that Dr. Reid's assessment of Ward's disability rating does not properly quantify the type and extent of disability Ward would have suffered absent the pre-existing disability, and that Dr. Reid's assessment thus does not support the conclusions made in the 1997 Reid Report.[8] Under these circumstances, the ALJ

---

[6]The exhibits in the 1997 Reid Report also fail to support Dr. Reid's assertion on this point. Specifically, Dr. Reid's three work restriction records do not describe or compare the two injuries. Likewise, the three records of Dr. Garner contained in the 1997 Reid Report fail to make the appropriate quantification. The first, dated April 7, 1988, is a letter from Dr. Garner to Dr. Reid, and relates to Ward's initial back injury in 1987. The second, an office memorandum dated June 23, 1989, concerns Ward's 1989 Injury and summarizes the symptoms that Ward initially presented. The third, dated August 17, 1989, is also an office memorandum and documents Ward's post-operative recovery after his 1989 Injury. Although each of these records discusses either the 1987 Injury or the 1989 Injury, they do not attempt to assess the disability Ward would have suffered from the 1989 Injury if the 1987 Injury had not occurred.

[7]The AMA Guides referred to by Dr. Reid are the American Medical Association's *Guides for the Evaluation of Permanent Impairment*.

[8]In addition to the finding that Dr. Reid's rating of Ward's disability was not the proper quantification, the ALJ also found that the rating was

was entitled to conclude, as he did, that Dr. Reid's assertions in the 1997 Reid Report fell short of satisfying the quantification aspect of the Contribution Element.

2.

Newport News, in its effort to justify its claim for § 8(f) relief, also presented the ALJ with evidence from Dr. Garner, Ward's treating neurosurgeon. First, it relied on Dr. Garner's agreement with the 1997 Reid Report, as reflected in the Transmittal Letter of January 7, 1999. The Transmittal Letter was authored and sent to Dr. Garner by a Newport News lawyer, who urged Dr. Garner to sign and return the statement: "I agree with Dr. Reid's opinion as expressed in his May 1, 1997 Report concerning Mr. Ward." The ALJ gave "no probative weight" to Dr. Garner's adoption of this statement, however, because "[t]here is no explanation whatsoever from Dr. Garner why he agrees with Dr. Reid." ALJ Decision at 6. The ALJ noted that "[a] statement that a doctor agrees with another doctor, if it includes no supporting evidence and no explanation of why and how the doctor arrived at his conclusion, is legally insufficient under *Carmines*." *Id.* at 6 n.3. Because Dr. Garner neither authored nor explained the basis for his adoption of the Transmittal Letter, the ALJ was entitled to discount its evidentiary value. *See Cherry*, No. 00-1279 (approving ALJ's skepticism regarding treating physician's adoption of similar statement in transmittal letter).

Second, Newport News sought support for its § 8(f) claim from the November 7, 1990 memorandum prepared by Dr. Garner on Ward's 1989 Injury. The ALJ, however, was well within his discretion in deciding that this document did not explain Dr. Reid's assessments in the 1997 Reid Report or Dr. Garner's agreement to the Report. ALJ Decision at 6. In his memorandum of November 7, 1990, Dr. Garner concluded that Ward had reached maximum medical improvement

not credible because, at the time of the 1997 Reid Report, when Dr. Reid asserted that Ward had a five percent *permanent* partial disability, Ward's medical records indicated that Dr. Reid had not placed Ward under any permanent work restrictions. ALJ Decision at 7. This finding further bolsters the ALJ Decision.

and that he was entitled to a seventeen percent permanent partial disability ratio following his 1989 Injury. However, that memorandum merely discussed the degree of permanent partial disability resulting from Ward's second injury in 1989, and it failed to provide an assessment of the degree of disability which would have resulted from the 1989 Injury alone, i.e., absent Ward's 1987 Injury. As we have pointed out, an employer seeking § 8(f) relief must provide a credible quantification of the type and extent of disability that would have ensued from the second injury alone. *Carmines*, 138 F.3d at 144 ("Such evidence is necessary before the ALJ can compare that degree of disability that would have resulted solely from the [second injury] to the degree of disability ultimately produced by the combination of the [second injury] and the supposed pre-existing condition[ ].").

3.

Finally, we observe that there is nothing before us to indicate that Drs. Garner and Reid are other than qualified physicians. And it is likewise true that, taken together, their opinions could have entitled Newport News to § 8(f) relief, *if* those opinions had been credited by the ALJ. The simple fact, however, is that the ALJ found the evidence insufficient to warrant § 8(f) relief. Although other inferences *could* have been drawn from the evidence, it is not for a reviewing court to draw such other inferences if the record contains substantial evidence supporting the ALJ Decision. *See Tann*, 841 F.2d at 543. Therefore, because substantial evidence supports the ALJ Decision denying the claim of Newport News for § 8(f) relief, we must deny the petition for review.

IV.

Pursuant to the foregoing, Newport News's petition for review of the BRB Decision is denied.

*PETITION FOR REVIEW DENIED*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

## I.

I disassociate myself from the remarks made in the majority decision concerning the weight of the evidence from two physicians involved in this case, Drs. Reid and Garner. The attempt by the majority at the conclusion of its opinion, to resurrect those physicians, indeed emphasizes the correctness of their opinions. Dr. Garner, a neurosurgeon who had twice operated on Ward, for example, obviously knew as much or more than anyone in the world about Ward's back. The failure to credit his report, and that of Dr. Reid, a treating physician, is simply not realistic. Neither, in my opinion, is it good law.

## II.

In the most general terms, I think our court is making a huge mistake in not recognizing that the Longshore and Harbor Workers Compensation Act is simply a federal substitute for ordinary Workers Compensation laws which are very nearly universal in this country except under the federal or similar statutes I have just mentioned. Those cases, as every practicing lawyer knows, are decided almost wholly upon forms and written reports completed by physicians and like experts, affidavits from those engaged in the occupation of the injured employee, and such evidence. Little oral testimony is taken, either before administrative law judges or the courts. Deciding these cases on the hyper-technical rules set out in *Carmines* and *Harcum I and II*, which I suggest are not fully understood by anyone, would do credit to a full-fledged case complete with judge, jury, discovery, and pre-trial, the entire legal process, instead of the administrative process which initially, I am sure, was calculated to see that injured employees receive prompt compensation and that employers remain able to assert their statutory rights without the requirement of extended litigation. If we want to impose some kind of a rule that each or all of these successive injuries, which *always must be present* for 8(f) relief, must be quantified under the AMA Guidelines to the Evaluation of Permanent Impairment, we should just say so, rely on addition and subtraction, and be done with it, instead of relying on the highly technical and little understood *Carmines* and *Harcum* rules which have used as their shelters here a failure to credit two perfectly reliable physicians who were the source of all the medical and related evidence which the

record shows could have been gathered about these injuries. With respect to the downgrading of a physician's written report because it comes from a "company doctor," no more reason exists to downgrade that report than was our "close scrutiny of the record" justified by findings of fact prepared by an attorney for one of the parties, which the Court forbade in *Anderson v. City of Bessemer City*, 470 U.S. 564, 571-73 (1985).

### III.

To get to the case at hand. That Newport News met the first two elements required for § 8(f) relief is undisputed in this court.

At issue here is whether Newport News met the third, or contribution, element.[1] In its petition for § 8(f) relief, Newport News submitted the opinions of two physicians as evidence that Ward's 1987 injury and surgery made his ultimate disability materially and substantially greater than it otherwise would have been. First, the employer submitted the May 1, 1997 letter report of Dr. Reid, a Newport News staff physician who was an examining and treating physician with respect to each of the injuries involved here. Dr. Reid's report speaks to the contribution element of Newport News' claim for 8(f) relief as follows:

May 1, 1997

Re:   Larry D. Ward; [SSN omitted on the account of
privacy concerns]

---

[1]The ALJ also found Newport News ineligible for relief on alternate grounds, rejecting as not supported by substantial evidence the stipulation that Ward had reached maximum medical improvement on or before November 13, 1995. Because the ALJ rejected this stipulation, the ALJ found that Ward's condition was not permanent, a finding that made Newport News ineligible for § 8(f) relief. The Board reversed the ALJ's finding that the permanency of Ward's disability had not been established as of November 13, 1995, and concluded that the employer therefore would have been eligible for relief had it proved the contribution element. The Director accepts the Board's conclusion that Newport News had established the permanency of Ward's disability.

Dear Ms. Massenberg:

At your request, I have reviewed Mr. Ward's clinic records, as well as his outside medical records which are contained in his clinic chart. In addition, I have treated Mr. Ward for his injury. I can provide the following medical history and opinions, stated with a reasonable degree of medical certainty.

1.   Mr. Ward had injured his back on December 11, 1987 and he had an aggravation injury on June 16, 1989.

2.   Mr. Ward first injured his back on December ll, 1987. Mr. Ward missed three weeks of work and then required work restrictions (Exhibit 1). Mr. Ward ultimately in March, 1988 required a laminectomy for a herniated disc (Exhibit 2). Such an injury and surgery leaves the back permanently weakened and thus significantly more susceptible to further injury, and with the resultant disability being substantially greater. For this reason, such an injury and surgery under the AMA Guides rates a minimum 5% permanent disability rating. Indeed, Mr. Ward missed six more months of work, and required work restrictions (Exhibit 3). Mr. Ward in late 1988 and 1989 missed 6 more months of work, and returned to work on work restrictions (Exhibit 4). Mr. Ward reinjured his back no approximately June 16, 1989 while pulling on heavy welding lines (Exhibit 5). Mr. Ward had a second herniated disc injury and required a second surgery (Exhibit 6).

3.   Mr. Ward reached maximum medical improvement from his back injury on or before November 20, 1992 when he was permanently passed out of the Shipyard due to his back disability.

4.   Mr. Ward's pre-existing condition of chronic back disability was permanent and serious. A cautions employer would not hire a worker for heavy manual labor, such as at the Shipyard, if he had the back injury and surgery he had in 1987-1988.

5. Mr. Ward's pre-existing condition of chronic back disability was manifest to the Shipyard based on its own records.

6. Mr. Ward's disability is not caused by his December 11, 1987 back injury alone, but rather his disability is materially contributed to, and made materially and substantially worse by his aggravation injury, on June 16, 1989. Mr. Ward originally injured his back on December 11, 1987. Mr. Ward required disc surgery and his back was left in a permanently weakened condition. Nevertheless, he was able to perform light duty Shipyard work. The June 16, 1989 injury permanently and substantially aggravated and worsened his weakened defective back structure, been able to return to light duty Shipyard work. However, the combination of the two injuries and two surgeries, and their cumulative effect, have disabled Mr. Ward from even light duty Shipyard work.

If I may provide you any further information, please do not hesitate to call me.

Sincerely,

/s/ James W. Reid, M.D.

James Reid, M.D.

Enclosures
(Exhibits 1-6)

Thus, Dr. Reid states that Ward's 1987 injury helped cause his 1989 injury and that, without Ward's 1987 injury, his 1989 injury and surgery would have left Ward able to perform light duty at the shipyard, just as Ward had returned to light duty after the 1987 injury.

The employer also submitted reports from Dr. Garner, Ward's treating neurosurgeon, who signed, in addition, a one-line statement, without explanation, stating, "I agree with Dr. Reid's opinion as

expressed in his May 1, 1997 report concerning Mr. Ward." More importantly, Dr. Reid's report includes, in addition, a letter and three office memos from Dr. Garner which were never mentioned by the Board and the substance of which was not considered by the ALJ.

The Director did not present to the ALJ any evidence relating to the contribution element of Newport News' § 8(f) claim.

The Board, following the ALJ, found that Newport News failed to prove the contribution element of the claim "because it did not quantify disability due to the June 1989 injury alone." In reaching its conclusion, the Board found the ALJ could not "examine the logic" and "evaluate the evidence" under *Carmines*. The ALJ also disregarded as carrying no probative weight Dr. Garner's letter agreeing with Dr. Reid. The Board agreed and affirmed.

At bottom, the decision of the Board is based on the fact that both the ALJ and the Board either did not believe the two physicians whose reports are a part of the record, or they discounted those reports, or both. It is my opinion that they arrived at their conclusions without any careful examination of those reports.

Dr. Reid was a 1963 graduate of the School of Medicine of Tulane University. He had served as a resident in internal medicine at the National Naval Medical Center and at the Naval Hospital. Additionally, he had served at the Naval Hospital in what the American Medical Association refers to as a flexible or transitional year. His major professional activity is that of full time staff at a hospital.

Dr. Garner was a 1967 graduate of the Medical School of the University of Virginia. His residency included the University of Virginia Medical Center in neurological surgery, University of Virginia in neurology, and the University of Virginia Medical Center in general surgery. He is Board certified by the American Board of Neurological Surgery.

No one can suggest anyone in the world who was more familiar with Ward's back than Dr. Reid and Dr. Garner. Dr. Reid was and had been one of Ward's examining and treating physicians on account

of both injuries involved in this case while Ward worked for Newport News. Additionally, Dr. Garner had operated on Ward's back twice for the very injuries at issue here, performing a laminectomy for excision of a herniated disc at L4-L5 in March 1988, and another laminectomy for another herniated next lower disc at L5-S1 in August 1989. Both surgeries included post-operative examinations by Dr. Garner, so, absent an examination or operation on Ward's back by some unknown physician whom I am sure the Director would have produced, it is safe to say that Dr. Garner knew more about Ward's back than anyone in the world. I add that it is not possible to say that Dr. Garner was not professionally qualified to make the reports which he did. Also, Dr. Garner was perfectly capable of reading the letter report of Dr. Reid which appears earlier in this opinion and expressing his opinion with respect to that letter.

In *Director, OWCP v. Newport News Shipbuilding*, 8 F.3d 175 (4th Cir. 1993) (*Harcum I*), in a similar fact situation involving an initial permanent partial disability followed by a second injury causing additional permanent partial disability, we held that the ultimate permanent partial disability must materially and substantially exceed the disability as would have resulted from the subsequent work-related injury alone. To show this, we held that "an employer must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury." *Harcum I*, 8 F.3d at 185. We continued "[o]nce the employer establishes the level of disability in the absence of a pre-existing permanent partial disability, an adjudicative body will have a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater." *Harcum I*, 8 F.3d at 185-186. We repeated that direction in *Newport News Shipbuilding v. Director, OWCP*, 131 F.3d 1079, 1081, 1082 (4th Cir. 1997) (*Harcum II*), and in neither of those decisions did we require that which is called quantification be limited to the disability percentages such as appear in the American Medical Association Guidelines to the Evaluation of Permanent Impairment or like medical guidelines.

The record at hand includes a stipulation that Ward injured his back in his employment on December 11, 1987 and that he had back surgery and returned to light duty work. It was also stipulated that Ward reinjured his back June 16, 1989 in the course of his employ-

ment, that the "1989 injury aggravat[ed] his pre-existing weakened back, required a second back surgery and . . . [Ward] has been unable to return to shipyard work since then." Dr. Reid's report of May 1, 1997 reports that Ward missed three weeks of work on account of his first injury and then required work restrictions of no vertical ladders, no lifting over 30 pounds, no work in tight spaces, and no stooping. One of the restrictions was to expire after 14 days and the others 19 days after January 4th, and Ward was to return to the clinic on January 21, 198[8] for an evaluation.

Dr. Reid's report continues that Ward required a laminectomy for that herniated disc which was performed by Dr. Garner, whose reports appear in the record. That report notes that Ward was discharged on the 4th post-op day and notes relief of the leg pain. He was instructed regarding care of the low back and told to return to Dr. Garner in three weeks after April 7, 1988. Dr. Reid's description of this injury is that:

> Such an injury and surgery leaves the back permanently weakened and thus significantly more susceptible to further injury and with the resultant disability substantially greater.

Dr. Reid's letter continues that under the American Medical Association Guidelines the injury and surgery described would rate a minimum 5% permanent disability rating. It continues that Ward missed six months of work and required work restrictions which are corroborated by the medical report from Dr. Reid dated September 15, 1988 showing that Ward was convalescing and continuing the restrictions of not lifting objects heavier than 30 pounds, no repeated bending or twisting or working in tight or cramped spaces, and no vertical ladders.

Ward returned to light work and reinjured his back on June 16, 1989. This June 1989 injury was another herniated disc injury for a different disc, L5-S1, and required a second surgery. The second surgery was also performed by Dr. Garner and three of Dr. Garner's office memos appear in the record with respect to that injury and operation. In Dr. Garner's opinion, Ward was left with an AMA 17% permanent partial disability rating on account of the back problem with permanent restrictions which include no lifting heavier than 40

pounds, no overhead work, no working in a kneeling or squatting position, no repeated or continued bending or twisting and no working in tight spaces. It shows that he returned to work with these restrictions on April 16, 1990, but no job could be found in the ship-yard with those restrictions. As noted, he is not totally and perma-nently disabled for all purposes, however, because he is employable at $102 per week.

Dr. Reid's letter report includes the following statements by him-self as an examining and treating physician, which certainly qualify as "medical evidence *or otherwise*," *Harcum II*, 131 F.3d at 1082 (italics in original), which Dr. Garner was certainly qualified to exam-ine and upon which express an opinion. Additionally, this evidence is certainly evidence with respect to which the ALJ *could* "examine the logic" and "evaluate." *Carmines*, 139 F.3d at 140. The fact that neither the Board nor the ALJ *did* examine the logic nor evaluate the evidence is no fault of Newport News.

> Mr. Ward ultimately, in March 1988, required a laminec-tomy for a herniated disc (Exhibit 2).

> Such an injury and surgery leaves the back permanently weakened and thus significantly more susceptible to further injury and with the resultant disability being substantially greater.

> Mr. Ward had a second herniated disc injury and required a second surgery.

> Mr. Ward's disability is not caused by his December 11, 1987 back injury alone, but rather his disability is materially contributed to and made materially and substantially worse by his aggravation injury on June 16, 1989.

> Mr. Ward originally injured his back on December 11, 1987. Mr. Ward required disc surgery and his back was left in a permanently weakened condition. Nevertheless, he was able to perform light duty shipyard work.

> The June 16, 1989 injury permanently and substantially aggravated and worsened his weakened defective back structure, resulting in another herniated disc, the need for a second surgery, and his current disability.
>
> Neither the 1987 injury, nor the 1989 injury, alone would have disabled Mr. Ward from performing light duty shipyard work.
>
> He performed such work after the 1987 injury. If he had had a normal back when he suffered the 1989 injury, he likewise would have been able to return to light duty shipyard work.

As I have pointed out, both the opinions of Dr. Reid and Dr. Garner were documented with contemporaneous written records which are nowhere contradicted, and no justification appears in the record for the failure of both the Board and the ALJ to "examine the logic" and "evaluate" those records. Neither the evidence of Dr. Reid nor Dr. Garner was testimony of a "non-examining, non-treating physician" which "should be discounted and is not substantial evidence." *Carmines*, 138 F.3d at 140, n.5.

The combination of the two injuries and two surgeries and the cumulative effect disabled Mr. Ward from even light duty shipyard work. Taken together or one at a time, the above items from Dr. Reid's report which are agreed to by Dr. Garner fit within the requirement of quantification that has been imposed on Newport News.

Newport News has shown "evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury." *Harcum II*, 131 F.3d 1081, 1082. "Neither the 1987 injury, nor the 1989 injury, *alone* would have disabled Mr. Ward from performing light duty shipyard work. He performed such work after the 1987 injury. If he had had a normal back when he suffered the 1989 injury, he likewise would have been able to return to light duty shipyard work." J.A. 11 (italics added). And it is admitted that he is now completely disabled from shipyard work.

Thus, *complete disability for shipyard work is certainly materially and substantially greater than a light duty disability for shipyard work.*[2]

Accordingly, I would grant the petition for review of Newport News and require the Board to see that relief is awarded to Newport News under 33 U.S.C. § 908(f)(1).

---

[2]Newport News does *not* take the 5% AMA disability mentioned by Dr. Reid, J.A. 19, and subtract it from the 17% AMA disability mentioned by Dr. Garner, J.A. 27, to arrive at its sought for result. *Carmines*, 138 F.3d at 143, precludes this method. But how this law of the circuit fits our insistence on quantification is nowhere explained.